### KELLEY et al. v. EVERGLADES DRAINAGE DISTRICT.

No. 10400.

Circuit Court of Appeals, Fifth Circuit.

Jan. 11, 1943.

Rehearing Denied Feb. 12, 1943.

Miller Walton and S. O. Carson, both of Miami, Fla., for appellants.

John D. McCall and Millard Parkhurst, both of Dallas, Tex., and Alfred E. Sapp and M. Lewis Hall, both of Miami, Fla., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

H. W. Kelley and others, objecting creditors, have appealed from an interlocutory decree confirming a plan for composition of the debts of Everglades Drainage District under the provisions of Chapter IX of the Bankruptcy Act, 11 U.S.C.A. § 401 et seq. On a former appeal by these objecting creditors we affirmed the order of the court denying motions to dismiss the petition for confirmation of the plan. Kelley, et al. v. Everglades Drainage District, 5 Cir., 127 F.2d 808.

Throughout the proceedings below, and after the coming in of the report of the master, these appellants made numerous objections to the proposed plan of composition. On this appeal they attack the interlocutory decree of confirmation on three grounds, contending (1) that the plan is not fair, equitable, nor for the best interest of creditors in that the percentage cash payments provided for are not all the District is reasonably able to pay (a point raised for the first time on appeal), and that the amounts to be received by bondholders "are not all they can reasonably expect, in the circumstances"; (2) that the plan discriminates unfairly in favor of the holders of unsecured indebtedness of the District in that it fails to provide the priority provided by law concerning claims payable from acreage taxes; and (3) that the plan is not a bargain between the District and its creditors, "openly arrived at

and devoid of overreaching, but on the contrary is a scheme whereby the 'promoters' or 'reorganizers' and Reconstruction Finance Corporation have determined the percentages to be paid to each class of creditors for the purpose of permitting the realization of a profit to an inside few promoting the composition".

At the time of the filing of the petition for confirmation on June 13, 1941, the District had been in default in the payment of its obligations for more than ten years. Its obligations on bonds and interest coupons amounted to $13,880,247.50, and indebtedness on other obligations amounted to $2,000,416.81—a total indebtedness of $15,880,664.31. The District had been struggling in the wake of the great financial depression, drainage facilities were in bad condition, property values had decreased, and property owners were unable to pay the taxes assessed against their lands. After occurrence of the default in 1931, a Bondholders' Protective Committee was immediately formed, and bondholders deposited with it a large percentage of the outstanding bonds of the District. During the years following 1931, the District was involved in litigation with creditors, and efforts to refinance its obligations did not gain substantial support until the present plan for composition of its debts was proposed.

Under the proposed plan of composition the insolvent District is to provide $400,000 in cash out of its funds and revenues, which amount together with a refinancing loan from Reconstruction Finance Corporation in the sum of $5,660,000 is to be used in discharging the debts of the District on a percentage basis. The debts of the District are divided into two classes. Holders of Class I Indebtedness, the bonded indebtedness, are to receive 56.918¢ on the dollar of unpaid principal, less deductions equal to the full face amount of each missing unpaid coupon maturing after July 1, 1941, and 36.77¢ on the dollar for each missing unpaid interest coupon maturing on or before July 1, 1941. Detached unpaid coupons maturing on or before July 1, 1941, are to be paid at the rate of 36.77¢ on the dollar. Holders of Class II Indebtedness, obligations other than on bonds and interest coupons, are to be paid 26.14¢ on the dollar of unpaid principal. The holders of more than 90% in amount of the indebtedness of the District consented to and expressly accepted the plan, and the only objection

is from appellants, who own less than 2½% of the bonds.

■ Throughout the ten year default period negotiations for refunding of the District's indebtedness did not succeed, and the present plan was then promulgated for the borrowing of money from the Reconstruction Finance Corporation and the paying of creditors in cash. There was evidence that prior to the promulgation of this plan there was no offer received which would have meant more than from 45¢ to 48¢ on the dollar to bondholders; that between 1931 and 1941 the bonds had a market value as low as 19¢ on the dollar; that between January, 1938, and June, 1941, their market value was from 22¼¢ to 40¢ on the dollar; and that their market value increased after the loan from the Reconstruction Finance Corporation had been proposed. Thus, by exercising its maximum borrowing capacity, the District was able to offer Class I creditors 56.918¢ on the dollar, an amount expressly acceptable to holders of approximately 95% in amount of the indebtedness, and expressly unacceptable only to these appellants. On this record it cannot be doubted that all bondholders, including these appellants, are being materially benefited by the plan and are receiving all they can reasonably expect in the circumstances, and that if the loan from the Reconstruction Finance Corporation had not been arranged for the holdings of all bondholders would be worth much less than the price they are to receive under the plan. West Coast Life Ins. Co. v. Merced Irr. Dist., 9 Cir., 114 F.2d 654, 679; Taylor v. Provident Irr. Dist., 9 Cir., 123 F.2d 965. Cf. Lorber v. Vista Irr. Dist., 9 Cir., 127 F.2d 628; Consolidated Rock Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982.

■ The plan of classification of the indebtedness of the District does not, as appellants allege, discriminate unfairly in favor of holders of unsecured indebtedness. Under Florida law the Class II Indebtedness constituted a first charge on the District's one mill ad valorem tax levy, and a second charge on the acreage taxes. Class I Indebtedness had first claim on the acreage taxes. Chapt. 8412, Acts of Florida, 1921. The source of income of the District is its taxes, and in order to exercise its maximum borrowing power it was necessary that it free itself from default and provide for extinguishment of claims against its acreage and ad valorem taxes. Moreover, in 1941 the Florida Legislature revised the tax system of the District so that all possible taxing resources might be used for payment of the new refinancing bonds which are to evidence the refinancing loan of the Reconstruction Finance Corporation. Acts 1941, S.B. 835, c. 20658. Provision for payment of 26.14¢ on the dollar to discharge Class II debts was fully authorized by the facts, and was not inequitable, unfair, or discriminatory.

■ The contention that the plan was "not openly arrived at and devoid of overreaching" is without foundation in the record. The negotiations between the Bondholders' Protective Committee, the syndicate, and the Governor of the State were not concealed, but were at all times open and aboveboard. The Governor designated the syndicate to purchase the bonds, and it purchased them and carried them until the terms of the Reconstruction Finance Corporation proposal had been met. Although the syndicate made a profit out of the transactions, the profit was the result of open and unconcealed trading. There is no proof of unfair dealing in the making of such purchases, and it is clear that the profit was not made at the expense of the bondholders or the District. Those persons who sold bonds to the syndicate are not complaining, and these appellants may not complain. This case is unlike American United Mutual Life Ins. Co. v. Avon Park, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91, relied upon by appellants. Here the syndicate was not the fiscal agent of the District, and it did not reap exorbitant profits or realize unauthorized fees at the expense of the District and its creditors. We find no fraud nor overreaching, but find that the record amply sustains the findings of the Court and master that the plan is fair and equitable, and for the best interest of the creditors, and that it does not discriminate unfairly in favor of any class of creditors.

■ In its practical incidence the plan meets the requirements of Chapter IX, and the attacks made upon it by the appellants are without substance. The efforts of the District and its co-operating creditors, who have acted in good faith to readjust its financial difficulties, have resulted in substantial benefits to the District and all its creditors. Their plan, approved by the Court, will not be defeated by the unfounded and extremely technical contentions of

a recalcitrant minority, which has at all times sought to obstruct the plan, and which apparently would not be satisfied with any plan which did not offer them one hundred cents on the dollar plus interest. Cf. Ouerbacker v. Henderson County, 4 Cir., 126 F.2d 309; Thomas v. El Dorado Irr. Dist., 9 Cir., 126 F.2d 922, 924.

We are of opinion and so hold that confirmation of the plan of composition was proper.

The judgment is affirmed.