KELLEY ET AL. *v.* EVERGLADES DRAINAGE DISTRICT.

No. 935. Decided June 1, 1943.

Mr. *Miller Walton* was on the brief for petitioners.

Messrs. *M. Lewis Hall, Alfred E. Sapp* and *John D. McCall* were on the brief for respondent.

Per Curiam.

In this case we are asked to review a plan for composition of the debts of respondent, a drainage district organized under the laws of Florida. The courts below have confirmed the plan under § 83 (e) of the Bankruptcy Act, 50 Stat. 653, 658, 11 U. S. C. § 403 (e), as amended, upon the finding of the District Court, prerequisite to the adoption of the plan, that it is "fair, equitable, and for the best interests of the creditors and does not discriminate unfairly in favor of any creditor or class of creditors." 132 F. 2d 742.

Petitioners are holders of interest coupons, detached from bonds issued by respondent, on which they have recovered judgments. According to recitals in the plan of composition, the debtor's bonds and the interest coupons, designated by the plan as Class I indebtedness, "constitute a first charge against taxes levied . . . against lands in the District, and have preference over Class II Indebtedness"; the Class II indebtedness, consisting of various miscellaneous claims against the District, "is payable from an ad valorem tax of one mill . . ., does not constitute a first charge against any fixed revenues of the District, and is not secured by any lien or pledge." Under the plan the bondholders are to receive 56.918 cents in cash for each dollar of principal amount; holders of detached interest coupons, including coupons on which judgments have been recovered, are to receive 36.77 cents, and holders of Class II indebtedness 26.14 cents. The plan is to be financed by a loan from the Reconstruction Finance Corporation, evidenced and secured by the issuance to it of new 4% bonds of the District.

Petitioners contend here, as they did in both courts below, that the plan discriminates unfairly in favor of the Class II creditors. But we are unable to reach that

question since we agree with petitioners that the record lacks the findings of fact which the statute and the General Orders in Bankruptcy require, and which are necessary to the determination of that question.

Section 83 (e) of the Act requires that "At the conclusion of the hearing, the judge shall make written findings of fact and his conclusions of law thereon." And Rule 52 (a) of the Rules of Civil Procedure, made applicable to bankruptcy cases by General Order in Bankruptcy No. 37, requires the court to "find the facts specially." In *Consolidated Rock Products Co.* v. *DuBois,* 312 U. S. 510, 520–525, this Court held that in the absence of findings as to the value of the assets subject to the payment of the respective claims of each class of bondholders, the courts were in no position to exercise the "informed, independent judgment" necessary to the discharge of their statutory duty to determine the fairness of a plan of corporate reorganization under the old § 77B of the Bankruptcy Act. In *Ecker* v. *Western Pacific R. Corp.,* 318 U. S. 448, and in *Group of Institutional Investors* v. *Chicago, M., St. P. & P. R. Co.,* 318 U. S. 523, we held the requirement of adequate findings applicable to railroad reorganizations under § 77 of the Bankruptcy Act.

It applies with no less force to cases of municipal bankruptcy. And, as stated in the *Consolidated Rock Products* case, *supra,* the fact that only a very small minority of creditors have objected to the plan does not relieve the courts of the duty of appraising its fairness, and of making the findings necessary to support such an appraisal. As we said in the *Chicago, Milwaukee, St. Paul & Pacific* case, p. 571, minorities under the various reorganization sections of the Bankruptcy Act "cannot be deprived of the benefits of the statute by reason of a waiver, acquiescence or approval by the other members of the class." The applicability of that rule to proceedings under Ch. IX is plain. We stated in *American Ins. Co.* v. *Avon Park,* 311

U. S. 138, 148, "the fact that the vast majority of security holders may have approved a plan is not the test of whether that plan satisfies the statutory standard. The former is not a substitute for the latter. They are independent."

The nature and degree of exactness of the findings required depends on the circumstances of the particular case. In the *Western Pacific* and *Chicago, Milwaukee, St. Paul & Pacific* cases, we pointed out that in cases of railroad reorganization, the duty of making basic evidentiary findings does not require a determination in terms of dollars and cents of the value of the assets subject to the respective liens. We held that it was sufficient if the Commission's report set forth its conclusion as to the prospective earning power of the reorganized road, with findings supporting its apportionment of future earnings among creditors and stockholders so as to preserve their relative priorities, together with reasons for its conclusions and essential supporting data. Once the priority of liens has been determined, considered estimates of future earning power afford a substantial basis for appraising the interests of the respective lienors. As such estimates involve an element of prophecy, the reorganization of properties which cannot readily be liquidated requires resort to "practical adjustments, rather than a rigid formula," *Consolidated Rock Products Co.* v. *DuBois, supra,* 529. Hence we concluded that findings of the future earnings of the reorganized railroad distributable to each class of security holders and creditors were an adequate substitute for findings of asset value in terms of dollars and cents, which we held could be dispensed with as affording no more than a delusive appearance of a certainty which the subject matter did not warrant.

Delusive exactness of findings is likewise not demanded in cases of municipal bankruptcy. But where future

tax revenues are the only source to which creditors can look for payment of their claims, considered estimates of those revenues constitute the only available basis for appraising the respective interests of different classes of creditors. In order that a court may determine the fairness of the total amount of cash or securities offered to creditors by the plan, the court must have before it data which will permit a reasonable, and hence an informed, estimate of the probable future revenues available for the satisfaction of creditors.

And where, as here, different classes of creditors assert prior claims to different sources of revenue, there must be a determination of the extent to which each class is entitled to share in a particular source, and of the fairness of the allotment to each class in the light of the probable revenues to be anticipated from each source. To support such determinations, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which the ultimate conclusion of fairness can rationally be predicated.

The findings in the present case fall short of that requirement.[1] Appropriate facts which might have been

---

[1] The master, whose findings were adopted pro forma by the District Court, approved the classification of debts proposed in the plan, and made findings as to the amount of indebtedness of each class. He substantially paraphrased the recitals of the plan as to the sources to which each class of creditors could look for payment, and found that the acreage tax, out of which Class I debts were payable, was "the main source of revenue of the District." He stated:

"Some of the objecting creditors have taken the position that the Plan of Composition, as amended, provides for the use of acreage tax funds for purposes other than the payment of bonds and interest coupons, and one might get that impression from simply reading isolated parts of the Plan, but, taking it as a whole, it does not so provide."

And, in answer to the contention that the plan violated the so-called "rule of absolute priority" (see *Case* v. *Los Angeles Lumber Co.*, 308 U. S. 106), he said:

considered, but which are nowhere referred to in the opinions or findings below, are the revenues which have in the past been received from each source of taxation, the present assessed value of property subject to each tax, the tax rates currently prescribed, the probable effect on future revenues of a revision in the tax structure adopted in 1941, the extent of past tax delinquencies, and any general economic conditions of the District which may reasonably be expected to affect the percentage of future delinquencies. It may be that adequate evidence as to these matters is in the present record. On that we do not pass, for it is not the function of this Court to search the record and analyze the evidence in order to supply

"A superficial reading of the Plan might so indicate, but a careful analysis of the entire Plan, the provisions of the loan, the conditions of payment of two classes of debts, and a practical application of the Plan to the District debts, resolves that question against such theory."

These were the only two findings made by the master relative to the rights of the two classes of creditors *inter se* or to the amount of revenues likely to be available for service of the debt. Without further findings on these vital matters the master concluded that: "The Proposed Plan of Composition, as amended, is fair, equitable and for the best interests of the creditors and does not discriminate unfairly in favor of any creditor or class of creditors."

The Circuit Court of Appeals clarified the master's findings as to the respective rights of each class of creditors by expressly stating that the Class II indebtedness was a first charge on the receipts from the ad valorem tax. It pointed out that in order that the District might exercise its maximum borrowing power it must extinguish all existing claims against the acreage and ad valorem taxes, and that in 1941 the tax structure had been revised so as to make all possible taxing resources available for payment of the new bonds issued to the Reconstruction Finance Corporation. From this it concluded without further discussion that "Provision for payment of 26.14¢ on the dollar to discharge Class II debts was fully authorized by the facts, and was not inequitable, unfair, or discriminatory."

Beyond this none of the findings or opinions below present any discussion of facts relating to the fairness of the respective treatment accorded the two classes of creditors by the plan.

findings which the trial court failed to make. Nor do we intimate that findings must be made on all of the enumerated matters or need be made on no others; the nature of the evidentiary findings sufficient and appropriate to support the court's decision as to fairness or unfairness is for the trial court to determine in the first instance in the light of the circumstances of the particular case. We hold only that there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion.

Since the state of the record is such that a proper determination of the questions of law raised by petitioners' contentions as to the treatment of Class II creditors cannot be made in the absence of suitable findings, the petition for writ of certiorari is granted, the judgment is vacated, and the cause remanded to the District Court for appropriate action in conformity with this opinion.

*So ordered.*

MR. JUSTICE BLACK, dissenting:

I cannot agree that this case should be summarily remanded. In June, 1941, the District filed an application for composition of its debts. The petitioners here filed a motion to dismiss, which was overruled. They appealed to the Circuit Court of Appeals, making contentions which that court found to be "technical in the extreme." *Kelley* v. *Everglades Drainage District,* 127 F. 2d 808, 809. When the case came back before the Circuit Court of Appeals in the instant proceedings, that court found from the entire record that these petitioners had by "unfounded and extremely technical contentions . . . sought to obstruct the plan." 132 F. 2d 742, 744, 745.

Reversal for more findings means still further delay in bringing about what is undoubtedly a much needed financial reorganization. While I am certain that the

courts below could couch their findings in different and more words, I am by no means sure they could set out with greater clarity their conclusion that the evidence shows both groups of bondholders to have been accorded fair and equitable treatment. The decision of the Circuit Court of Appeals was made with full appreciation and after full consideration of the issues, the evidence, and the District Court's findings. Under these circumstances, I should prefer to deny certiorari, but since the Court has determined to grant review, I think we should not dispose of the case without first giving the parties an opportunity to argue the issues. On the record as I now see it, the findings were abundantly adequate, and the conclusion of the Circuit Court of Appeals was correct.