In re EVERGLADES DRAINAGE DIST.

No. 1949.

District Court, S. D. Florida, Miami Division.

March 6, 1944.

M. Lewis Hall and Alfred E. Sapp, both of Miami, Fla., and John D. McCall and Millard Parkhurst, both of Dallas, Tex., for petitioner.

Walton, Lantaff, Atkins & Carson, of Miami, Fla., for objecting creditors.

HOLLAND, District Judge.

This case was considered on its merits, and an interlocutory decree was entered by the Honorable Curtis L. Waller, then United States District Judge, on March 27, 1942. An appeal was taken to the Circuit Court of Appeals for the Fifth Circuit, and the District Court was affirmed on January 11, 1943. Kelley v. Everglades Drainage Dist., 132 F.2d 742. The petition for certiorari was granted by the Supreme Court of the United States, and the judgment in 132 F.2d 742 was vacated, and the cause was remanded to the District Court for appropriate action in conformity with the opinion reported in 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485.

On August 6, 1943, pursuant to the decision of the Supreme Court of the United States, rendered June 1, 1943, the cause was re-referred back to the Honorable N. Vernon Hawthorne as special master to take such additional testimony, and proofs, and make such additional findings as may be required, and in conformity with said decision of the Supreme Court of the United States.

On January 4, 1944, the special master filed in this Court his report pursuant to said re-reference. Objections to said re-

port were filed by the objecting creditors on January 14, 1944. Said objections came on to be heard on February 19, 1944, and the Court has heard counsel at length, the arguments extending from the forenoon of February 19th through the forenoons and afternoons of February 21, 22, 23, 1944.

The report has been considered as to its sufficiency, adequacy, and weight, as constituting findings of fact as required by the opinion and mandate of the Supreme Court. For reference in this opinion I have separated in six divisions, denominated A, B, C, D, E, and F, the findings of fact suggested by the Supreme Court. These are:

A. The revenues which have in the past been received from acreage taxation, and ad valorem taxation;

B. The present assessed value of property subject to each tax;

C. The tax rates currently prescribed;

D. The probable effect on future revenues of the revision in the tax structure adopted in 1941;

E. The extent of past tax delinquencies; and

F. Any general economic conditions of the District which may reasonably be expected to affect the percentage of future delinquencies.

These six classifications may be regrouped, placing A, B, C and E in a category as dealing with past factual matter, and classifications D and F dealing with prospective or probable conditions which may be reasonably anticipated as of the date of the filing of the petition.

In the hearings since the master's appointment on August 6, 1943, he heard a large volume of testimony as to what had actually occurred since the 1941 Act became effective, Acts Fla.1941, c. 20658, but this testimony was properly viewed in its capacity as confirmation of prophecy. I find that the master so considered it, and I so consider it.

I find that as to classification D and F the master's report should be, and is hereby, confirmed.

The record reflects a serious breakdown of tax collections of the District for the 1931-1940 period of time, both as to acreage and ad valorem taxation, but especially as to acreage taxation. The executive and legislative branches of the State government in 1941 proposed and took constructive action with reference to the problems of this public political body. The Reconstruction Finance Corporation became the owner of such a large amount of the indebtedness of the District that there has come into this case voluminous testimony submitted before the master on the second reference as to what is the limit of ability of the District to borrow a maximum amount for the payment of its creditors.

The master has dealt with classifications A, B, C and E from that viewpoint. He gave credence to the opinions of witnesses whom he considered were well informed and qualified to express an opinion, and in that regard his report is sustained. Treating his report as findings of fact in answer to classifications A, B, C and E, and viewed from this viewpoint, the report is confirmed.

I now proceed to make additional findings on classifications A, B, C and E, viewing the matter strictly from the standpoint of the ability of the District to pay its debts.

Before making these findings, I regard some observations as pertinent. The acreage tax, to which the District has a right to look, is by legislative action made for a specific amount of money on an acreage basis. This was true under the original Act of the legislature in 1913 providing for revenue for the District, and this method of acreage taxation was preserved by the current Acts of the Legislature at various sessions for the period between 1913 and 1925, at which time the taxation legislation referred to as "the bondholders contract" was enacted. This feature also characterizes the acreage taxation embraced in the 1941 legislation. The ad valorem taxation was first provided by an Act of the Legislature in 1921, Acts Fla.1921, c. 8412, in which year an ad valorem tax of one mill on the assessed valuation was provided. It is thus seen that both the acreage and the ad valorem sources of revenue are unlike a source of revenue provided by many Drainage Acts, in which benefits are determined and legislatively considered as the ability of the District to pay. Both the acreage tax and the ad valorem tax enjoyed by this District are, of course, unlike an unlimited ability to tax incident to general obligations of a taxation body.

I now take up and make findings with reference to classifications A, B, C and E.

A. A statement showing the revenue for the period from 1931 to 1940 which the District collected from each source of taxation is as follows:

B. The assessed value of the property for the year 1940 subject to the one percent ad valorem tax was $24,709,000. (Record page 439.) A statement as to the total

### Acreage

| Year | Assessment Aggregate | Collection | Per Cent |
|------|------|------|------|
| 1931 | $ 896,242 | $ 93,957 | .105% |
| 1932 (Made in 1935) | 1,950,152 | 144,738 | .074% |
| 1933–34–35 (See Note) | ....... | ....... | ...... |
| 1936 | 2,156,834 | 142,014 | .066% |
| 1937 | 674,394 | 54,551 | .081% |
| 1938 | 674,394 | 35,207 | .052% |
| 1939 | 674,394 | 44,853 | .07 % |
| 1931–39 | ....... | ....... | .073% |
| 1940 | 15,310,147 | 106,847 | .007% |
| 1931–40 | ....... | ....... | .03 % |

Note: The 1940 assessment was included in assessments made for 1933–34–35; and a deficiency in 1936–37–38–39. (Second Record—pages 191–192–193).

### Ad Valorem

| Year | Assessment | Collection | Per Cent |
|------|------|------|------|
| 1931 | $ 24,523 | $ 8,340 | 34% |
| 1932 | 15,657 | 11,154 | 71% |
| 1933 | 13,865 | 8,371 | 60% |
| 1934 | 20,993 | 7,838 | 37% |
| 1935 | 16,100 | 7,906 | 37% |
| 1936 | 20,554 | 10,679 | 52% |
| 1937 | 20,783 | 10,472 | 51% |
| 1938 | 20,235 | 11,739 | 58% |
| 1939 | 20,013 | 12,788 | 64% |
| 1940 | 24,768 | 13,171 | 53% |
| Total Aggregate for Period 1931–40 | 197,491 | 102,458 | 51.6% |

(Second Record—pages 196–197)

The objecting creditors urge that in making these findings I go back to the year 1913. The period from 1913 to the Florida "real estate boom" years 1925 and 1926 constitutes a period affected by quite a different economic condition in Florida history, the same being reflected in the collection of taxes by Everglades Drainage District. Likewise the period from the "real estate boom" to 1931 constitutes a period affected by quite different conditions, likewise reflected in tax collections of the District. The period from 1931, when the District first defaulted, to 1940 is another period, with different economic historical background, and quite a changed condition in tax collections. I deem the latter period alone as pertinent to the case in the making of appropriate findings of fact.

amount of the acreage tax for the period 1931 to 1940 is shown in the above statement.

C. This finding is as to tax rates currently prescribed. For the reasons above indicated, I make this finding as to the ten year period 1931-1940. The acreage tax was legislatively determined and is reflected in the "Assessment Aggregate" in "A" above. The ad valorem tax was legislatively fixed at one mill on assessment values, and the yearly assessment for said ten year period is shown in "A".

E. This finding relates to past delinquencies in tax collections. The statement in "A" reflects the assessments and collections of both acreage and ad valorem taxes over the ten year period prior to the filing

of the petition. From that statement delinquencies are to be seen.

The objecting creditors in developing testimony before the special master on this re-reference, and in preparing the objections that have been filed to the report of the special master, and in the argument on the objections, have contended that the opinion of the Supreme Court, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485, constituted a reversal of the decision of the Court of Appeals. 132 F.2d 742. With this contention I disagree. The case was not briefed, nor argued, in the Supreme Court. Ex parte French, 91 U.S. 423, 23 L.Ed. 249, is cited in support of the contention of the objecting creditors. In the cited case the Supreme Court determined that the facts found were not sufficient to justify the conclusion reached. In this drainage case the Supreme Court has not found the facts as either justifying or not justifying the conclusion reached by the lower courts, and has remanded the case for definite findings, which were lacking, which the Supreme Court observed might be in the record but were not specifically stated as findings.

The objecting creditors seek to have this Court apply the findings of fact to the merits of the case, and enter a new decree either confirming the plan or dismissing the case, which theory is consistent only with the opinion of the Circuit Court of Appeals having been heretofore reversed. In my judgment, in the absence of a clear reversal by the Supreme Court, I should not sit in the capacity of reviewing the decision of my brother, The Honorable Curtis L. Waller, former United States District Judge, now a Circuit Judge, nor should I sit in review of the Court of Appeals.

The vacating of the judgment of the Circuit Court of Appeals was incident to the acceptance of the case by the Supreme Court on certiorari. There is before me only the following in my judgment: .

(a) Does the special master's report embrace the findings of fact which the Supreme Court ordered should be found;

(b) The sufficiency or correctness of the master's findings of fact, that is whether the master's findings are supported by the evidence, whether gleaned from the original record or from additional evidence.

The case has been argued by counsel from a far broader standpoint. Counsel for the District orally stated that their position before the master was that of not desiring to be in a position of opposing any additional testimony offered, but I am of the opinion that both counsel in their zeal have gone far beyond the province of this inquiry. While the master has followed them in this broad aspect of the scope of the reference in his findings, I am of the opinion that I should confine my orders to the matters as properly considered and presented by the mandate of the Supreme Court. Stated differently, the counsel and the master have argued and presented the case on a basis of a reversal having been pronounced by the Supreme Court, with the right to the District to again present its case in the light of additional findings, but I disagree. The case has not been briefed nor argued orally before the Supreme Court, and my construction of the opinion is that the record was searched to the extent that specific findings of fact were found absent, which the Court stated should in the first instance have been found by the District Court.

Up to this point in this opinion I have not applied either the findings of the special master nor those additionally found by me to the merits of the case, and I have expressed no conclusions of law. However, the findings of fact which are now additionally made, both by the Special Master and specifically confirmed by me by this opinion, and those specifically or additionally made by me, are consistent with and support the decree entered by Judge Waller, and affirmed by the Fifth Circuit, Court of Appeals, reflecting the following conclusions:

That there had been quite a breakdown in the tax collection structure of the District, especially in the matter of acreage taxes;

That constructive measures were needed to instill new life in the taxation machinery of the District;

That the 1941 Legislature dealt with this problem in a manner which was reasonably well-calculated to bring about a renewal of interest in the payment of District taxes;

That the taxation proposed by the 1941 Act, measured by the history of the District, and the reasonable prospects of future collections, had rendered the plan proposed by the petitioner fair and equitable, and

I this day re-enter the interlocutory decree heretofore entered.

The objections, filed January 14, 1944, to the master's report, which was filed January 4, 1944, are overruled.

Action on the suggestion of contempt, filed February 19, 1944, is denied.