The B. F. GOODRICH COMPANY,
Plaintiff-Appellant,

v.

RUBBER LATEX PRODUCTS, INC. and
Harrison & Morton Laboratories, Inc.,
Defendants-Appellees.

No. 17643.

United States Court of Appeals
Sixth Circuit.

July 18, 1968.

As Amended July 29, 1968.

Rehearing Denied Sept. 27, 1968.

Arthur L. Cain, Cleveland, Ohio, for appellant, Charles E. Herrstrom, Bosworth, Sessions, Herrstrom & Knowles, Cleveland, Ohio, on the brief, Harold S. Meyer, Akron, Ohio, of counsel.

Paul A. Weick, Akron, Ohio, for appellees, Paul A. Weick, Weick & Genovese,

J. William Freeman, Freeman & Taylor, Akron, Ohio, on the brief.

Before O'SULLIVAN, PHILLIPS and COMBS, Circuit Judges.

PHILLIPS, Circuit Judge.

The District Court dismissed this action for infringement of United States Patent No. 2,330,370, which covers a method and apparatus for the continuous manufacture of long length rubber latex tubing. Plaintiff appeals.

Infringement by defendants of claims 4, 10, 16, 17 and 18 of the patent was admitted by stipulation.

In scanty findings of fact which contain little more than generalized conclusions, the District Court held the claims to be invalid on four grounds: (1) that the claimed invention had been anticipated by the prior art; (2) that the claimed invention was nothing more than an improvement over the prior art that would have been obvious to anyone skilled in the art; (3) that the invention had been in public use or on public sale more than two years prior to the filing of the application for the patent; and (4) that plaintiff's assignor was not the sole inventor. On a fifth ground plaintiff was held to be estopped by the defense of laches.

1) Insufficiency of findings of fact

Rule 52(a), Fed.R.Civ.P., requires that in all actions tried on the facts without a jury, the District Court "shall find the facts specially and state separately its conclusions of law thereon." The findings of fact and conclusions of law in the present case are made an appendix to this opinion.

The purpose of findings of fact under this rule were stated by the advisory committee as follows:

"Findings of fact aid in the process of judgment and in defining for future cases the precise limitations of the issues and the determination thereon. Thus they not only aid the appellate court on review, Hurwitz v. Hurwitz, 1943, 136 F.2d 796, [148 A.L.R. 226] 78 U.S.App.D.C. 66, but they are an important factor in the proper application of the doctrines of res judicata and estoppel by judgment. Nordbye, Improvements in Statement of Findings of Fact and Conclusions of Law, 1 F.R.D. 25, 26–27; United States v. Forness, C.C.A.2, 1942, 125 F.2d 928, certiorari denied [City of Salamanca v. United States,] 62 S.Ct. 1293, 316 U.S. 694, 86 L.Ed. 1764" Rule 52, Fed.R.Civ. P., Notes of Advisory Committee.

As explained by the notes of the Advisory Committee, this rule contemplates that the District Judge shall make "brief, definite, pertinent findings and conclusions upon the contested matters." Although there is no necessity for "over-elaboration of detail or particularization of facts," the Supreme Court has held that: "Statements conclusory in nature are to be eschewed in favor of statements of the preliminary and basic facts on which the District Court relied. * * * Otherwise, their findings are useless for appellate purposes." Dalehite v. United States, 346 U.S. 15, 24, n. 8, 73 S.Ct. 956, 962, 97 L.Ed. 1427. To support conclusory determinations "there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which the ultimate conclusion * * * can rationally be predicated." Kelley v. Everglades Drainage District, 319 U.S. 415, 420, 63 S.Ct. 1141, 1144, 87 L.Ed. 1485. The Court further said: "[T]here must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion." 319 U.S. at 422, 63 S.Ct. at 1145.

In Deal v. Cincinnati Board of Education, 369 F.2d 55, 63–64 (6th Cir.), cert. denied, 389 U.S. 847, 88 S.Ct. 39, 19 L.Ed. 2d 114, this Court said:

"Under Rule 52(a) the court was required to find the facts specially. The findings should be both 'comprehensive and pertinent to the issues to provide a basis for decision.' Schilling v. Schwitzer-Cummins Co., 79 U.S.App. D.C. 20, 142 F.2d 82, 84 (1944); Shapiro v. Rubens, 166 F.2d 659 (7th Cir. 1948). In meeting this standard, the

District Courts are not required to prepare elaborate findings on every possible issue or contention raised at trial. However, there must be subsidiary findings to support the ultimate conclusions of the court."

In Welsh Co. of California v. Strolee, 290 F.2d 509, 511 (9th Cir.), an action for patent infringement, the Court said:

"[W]e think it is the duty of the District Court to find the facts and not to leave to us the heavy chore of reviewing sundry, contradictory assumptions any of which could have led to the conclusory statements misnamed Findings of Fact in the present record.

" 'Findings of fact are required under Rule 52(a), Federal Rules of Civil Procedure * * *. The findings should be so explicit as to give the appellate court a clear understanding of the basis of the trial court's decision and to enable it to determine the ground on which the trial court reached its decision. * * * This court is not the trier of facts, nor does it substitute its own judgment for that of the trial court.' Irish v. United States, 9 Cir., 1955, 225 F.2d 3, 8."

Accord: Ceramic Tilers Supply, Inc. v. Tile Council of America, 378 F.2d 283 (9th Cir.); Yavitch v. Seewack, 323 F.2d 561 (9th Cir.); National Lead Co. v. Western Lead Products Co., 291 F.2d 447, 451 (9th Cir.); Hycon Manufacturing Co. v. H. Koch & Sons, 219 F.2d 353, 356 (9th Cir.), cert. denied, 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278; United Shoe Machinery Corp. v. Kamborian, 160 F.2d 461, 464–465 (1st Cir.).

In 4 Deller, Walker on Patents § 900 at 3068 (1937) it is said: "Findings which are contested should be put in such detail as will decide each contest made concerning them."

■ We hold that the findings of fact of the District Court are insufficient to meet the requirements of Rule 52(a).

2) The Invalidity of Patent in Suit

■ In view of the foregoing it would be appropriate for this Court to vacate the judgment of the District Court and remand the case for sufficient findings of fact under Rule 52(a). Welsh Co. of California v. Strolee, supra, 290 F.2d 509, 514 (9th Cir.); Metalock Repair Service, Inc. v. Hartman, 258 F.2d 809, 816 (6th Cir.). However, in order to avoid further extension of this protracted litigation, we proceed to dispose of the appeal on its merits despite the insufficiency of the findings of fact.

The patent in suit (the Miller patent) was issued to plaintiff-appellant (Goodrich) as assignee of the designated inventor on September 28, 1943. This action for infringement was not instituted until December 9, 1960, more than seventeen years after the issuance of the patent and three months after its expiration.

Donald J. Miller was employed as a research technician by the Miller Rubber Co. immediately after his graduation from college in 1929. After the Miller Company was merged with Goodrich he continued in the employ of Goodrich until 1946. He was trained and worked under the direction of Dr. H. A. Morton, director of research. Dr. Morton's supervisor was Dr. M. H. Harrison, technical superintendent and chief chemist for the Miller Rubber division of Goodrich.

The patent in suit involves the use of mandrels in the continuous manufacture of long length rubber latex tubing. A mandrel, as used in the patent and defined at the trial, is a temporary support for use during formation of the product. It is removed during subsequent manufacturing procedure and does not itself become part of the product. In the process here involved, the mandrels are used over and over again by recoupling them end to end for passage through the latex bath.

In 1933 or 1934 Dr. Harrison formed a corporation known as Ella Jewell, Inc., which manufactured foot appliances by progressively passing filamentary mandrels through a dispersion, with the sponge rubber mandrels being tied end to end to achieve continuous operation. The mandrels used in the Ella Jewell process were purchased from Goodrich.

They differed from the mandrels here involved in that they became a part of the manufactured product.

On February 10, 1937, Donald J. Miller approached Dr. Morton and disclosed to him an idea that ultimately led to the development of the process for the manufacture of long length latex tubing as taught by the Miller patent. Following this disclosure Miller, Dr. Morton, Dr. Harrison and other Goodrich personnel worked together and developed the method of producing long length latex rubber tubing resulting in the process set forth in the Miller patent. Appellee contends that all these men worked together so closely on this project that it was next to impossible at the trial to determine who actually contributed any specific aspect of the development of the process.[1]

Donald J. Miller filed an application for the patent in suit on June 5, 1940. Dr. Harrison and Dr. Morton had no knowledge of this filing at that time.

Drs. Harrison and Morton left Goodrich in 1939 and organized the appellee corporation in 1940. During that same year Dr. Harrison applied for a patent on a process of manufacturing latex tubing by means of progressively running mandrels over a series of pulleys, thereby subjecting the mandrels to repetitive dippings in a latex compound. Patent No. 2,327,638 was issued to Dr. Harrison on August 24, 1943.

When they learned of the issuance of the Miller patent in 1943, Dr. Harrison and Dr. Morton took steps to investigate the Miller patent as it related to Dr. Harrison's patent. On January 12, 1944, Dr. Harrison was advised by his patent counsel that he need not be concerned about the Miller patent because of prior art.

The District Court held the patent to be invalid because of lack of novelty and on the ground of obviousness. The basis for the holding of lack of novelty was that each and every element of the five claims of the Miller patent were taught by Twiss U. S. Patent No. 1,877,207 "taken alone or considered in the light of other prior art patents teaching continuous operation by end to end coupling and/or the Ella Jewell public use." In holding the patent to be invalid for obviousness, the District Court ruled that it is nothing more than an obvious improvement over the teachings of the Twiss patent.

■ We hold that the District Court was correct in finding the patent invalid for obviousness under 35 U.S.C. Section 103.[2] We do not reach the issue of novelty.

Mr. Miller, who claimed to be the inventor, admitted at the trial that he did not consider the temporary coupling of a plurality of mandrels end to end to be the real inventive step of his process. Rather Miller described the inventive portion of his concept as the method by which the mandrels were coupled:

> "The use of a string which had previously been tied into a loop, punching a hole through the end of a mandrel and inserting a knitting needle, catching the tied loop, bringing a loop through and putting it over the end of the tubing. Doing the same to the adjacent tube, uniting the two together so that one would pull the other through."

It is sufficient to note that the process that Mr. Miller described in his quoted testimony as the real inventive concept of his patent is not mentioned in any of the five claims of the patent involved in this litigation.

1. The District Court held that Miller was not the sole inventor of the patent and that the patent was invalid for this reason under 35 U.S.C. §§ 111 and 115. We do not reach this question, since we dispose of the case on another ground.

2. "§ 103. Conditions for patentability; non-obvious subject matter
   "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

Under Section 103 of the Act (footnote 2) a patent is invalid if the differences between the subject matter of the claims sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time to a person having ordinary skill in the art.

Twiss patent No. 1,877,207 was issued September 13, 1932. The application was filed with the United States Patent Office in 1928 and in Great Britain in 1927. The Twiss patent was not listed by the Patent Office on the file wrapper as having been considered in processing the application for the patent in suit. Although 35 U.S.C. § 282 creates a presumption that a patent is valid, it has long been held in this and other circuits that this presumption is weakened and largely dissipated when pertinent prior art, such as Twiss U. S. Patent 1,877,207, was not considered by the Patent Office during processing of the patent in suit. Jaybee Manufacturing Corp. v. Ajax Hardware Manufacturing Corp., 287 F.2d 228 (9th Cir.); Royal Patent Corp. v. Monarch Tool & Mfg. Co., 203 F.2d 299 (6th Cir.); France Mfg. Co. v. Jefferson Electric Co., 106 F.2d 605 (6th Cir.).

Dr. Edward Partridge, expert witness for Goodrich, testified that the patent in suit differs from the Twiss patent in that Twiss does not suggest the temporary coupling of a plurality of mandrel members or cores end to end. The record shows that the feature of end to end tying was involved, however, in the Ella Jewell process and other prior art. Dr. Partridge also admitted that Cook U. S. Patent 1,312,954 taught tying end to end to achieve continuous operation in the making of insulated wire.

In Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, the Supreme Court said:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined."

In *Graham* the Court quoted the following language from the Senate and House Reports, S.Rep.No. 1979, 82d Congr., 2d Sess. (1952) concerning § 103 of the Act (n. 3):

"An invention which has been made, and which is new in the sense that the same thing has not been made before, may still not be patentable if the difference between the new thing and what was known before is not considered sufficiently great to warrant a patent."

The Court held in *Graham* that § 103 is merely a codification of judicial precedents requiring that the subject matter sought to be patented be compared with the prior art, such as Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 13 L.Ed. 683. This Court held to the same effect in General Motors Corp. v. Estate Stove Co., 203 F.2d 912 (6th Cir.), cert. denied, 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 348.

It is argued on behalf of Goodrich that the temporary coupling of a plurality of mandrel members or cores end to end for continuous operation is a basic novel concept of the patent in suit which was missing from the Twiss patent. Both the Twiss and Miller patents teach continuous operation. Any mandrel obviously must have a determined length, thereby necessitating the coupling of mandrels together end to end to achieve continuous operation. The Twiss patent taught continuous operation by means of temporarily coupling the mandrels end to end. Any difference between Twiss and Miller would be one of dimension.

Goodrich further urges that the uncoupling of the mandrel members and removal for a re-use is a novel concept. It is true that in the Ella Jewell process the mandrels or sponge rubber cords became a part of the manufactured product. The Twiss patent expressly provides, however, for removal as follows: "The

coating which is now the former tube is then removed from the supporting core."

■ Goodrich contends that the Miller patent was commercially successful and resolved a long-felt need in the industry, while the Twiss patent did not achieve commercial success. As said by the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162 "[C]ommercial success without invention will not make patentability." To like effect see Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; L. M. Leathers' Son v. Goldman, 252 F.2d 188, 191 (6th Cir.).

■ Appellant contends that the record does not contain expert testimony to support a conclusion of obviousness. Such testimony is not necessary in the present case. General Motors Corp. v. Estate Stove Co., supra, 203 F.2d 912, 914–915 (6th Cir.), cert. denied, 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 348, quoting Judge Learned Hand in Kohn v. Eimer, 265 F. 900, 902 (2d Cir.).

The record establishes that the patent in suit is a "competent, skillful arrangement of elements that achieved results in a better way than any prior device adapted to the purpose." We conclude, however, that the claims of this patent "represent nothing more than an aggregation of old elements within the mechanical skill of the trade, * * *." Ranco, Inc. v. Gwynn, 128 F.2d 437, 443 (6th Cir.).

We agree with the District Court that the Miller patent is an obvious improvement over the Twiss patent and other prior art and is invalid for obviousness under 35 U.S.C. § 103. It is not necessary to pass on the other grounds of asserted invalidity.

Affirmed.

## APPENDIX
## FINDINGS OF FACT AND CONCLUSIONS OF LAW
### (Filed October 10, 1966.)

The Court makes the following findings of fact in the within case.

That in the year 1937 each and every element of Claims 4, 10, 16, 17 and 18 was clearly taught by Twiss U. S. Patent '207 taken alone or considered in the light of other prior art patents teaching continuous operation by end to end coupling and/or the Ella Jewel public use.

That in the year 1937 it would have been obvious to any person skilled in the trade to have taken the step of tying the filamentary mandrels of Twiss '207 in end to end relationship in order to achieve a continuous operation devoid of rethreading problem with the further step of uncoupling said temporarily coupled mandrels and subsequently removing the tubing therefrom being equally obvious to persons skilled in the trade in the year 1937.

Donald J. Miller was not the sole inventor of U. S. Patent 2,330,370 as set forth on the face thereof.

That tubing manufactured in accordance with the teachings of Miller U. S. Patent 2,330,370 was in public use or on public sale more than two (2) years prior to the filing of the application for patent thereon.

That plaintiff had knowledge at least as early as 1941 that defendants were manufacturing long length tubing and further had knowledge at least as early as 1943 that defendant's manufacture of such long length tubing constituted an infringement of the then issued Miller U. S. Patent 2,330,370.

That notwithstanding such knowledge on the part of the plaintiff they inexcusably delayed in instituting the within action.

During the years 1943 through 1952 plaintiff was using latex tubing machinery that infringed the defendants' Harrison patent and the defendants were unaware of such infringement until after the instant suit was filed.

The Court further makes the following conclusions of law:

The Court finds that Claims 4, 10, 16, 17 and 18 of Miller U. S. Patent 2,330,370 are invalid within the meaning of 35 U.S.C. § 102(a) and (e).

The Court finds that Claims 4, 10, 16, 17 and 18 of Miller U. S. Patent 2,330,370 are invalid as being an "obvious" improvement over the teachings of Twiss Patent '207 within the meaning of 35 U.S.C. § 103.

The Court finds that the Miller U. S. Patent 2,330,370 is invalid in its entirety by virtue of the fact that Donald J. Miller is not the sole inventor of the subject matter thereof as required by 35 U.S.C. §§ 111 and 115.

The Court finds that the Miller U. S. Patent 2,330,370 is invalid by virtue of the fact that the teachings thereof were in public use and on public sale more than two years prior to the filing date thereof so as to preclude this patent from being valid in accordance with the provisions of predecessor of 35 U.S.C. § 102(b) which provided for a two year period.

The Court finds that the plaintiff is estopped by the defense of laches from enforcing Claims 4, 10, 16, 17 and 18 of Miller U. S. Patent 2,330,370 against these defendants, and that the remaining claims of Miller U. S. Patent 2,330,370 are not infringed by defendants.

### ORDER DENYING PETITION FOR REHEARING

PER CURIAM.

The principal emphasis of appellant's petition to rehear is a challenge to the following language of the opinion: "The Twiss patent taught continuous operation by means of temporarily coupling the mandrels end to end." This sentence is intended to be read in the total context of the opinion and not in isolation. Our conclusion is that the temporary coupling of mandrels end to end was only an obvious improvement over the teaching of Twiss and other prior art and added nothing to the patentability of the process under 35 U.S.C. § 102. Our opinion emphasizes that the feature of end to end tying was involved in other prior art, including the Ella Jewell process and Cook Patent 1,312,954.

It is ordered that the petition for rehearing be and hereby is denied.

Entered by order of the Court.