Bernice H. ROBERTS, Plaintiff,

v.

Benjamin F. BAILAR, Defendant.

No. CIV–3–77–289.

United States District Court,
E. D. Tennessee, N. D.

Sept. 18, 1980.

On Motion for Additional Findings of Fact
Oct. 21, 1980.

J. Mikel Dixon and Philip P. Durand, Knoxville, Tenn., for plaintiff.

Richard K. Harris, Asst. U. S. Atty., Knoxville, Tenn., and John C. Oldenburg, Memphis, Tenn., for defendant.

## MEMORANDUM

NEESE, District Judge.

This is an action by the plaintiff Mrs. Bernice Roberts, a white female employee of the Postal Service, against the Postmaster General in his capacity as head of that governmental entity. It is governed by the provisions of 42 U.S.C. §§ 2000e–5(f) through (k). 42 U.S.C. § 2000e–16(d).

Mrs. Roberts claims that personnel actions of the Postal Service affecting here were not free from discrimination based on her sex. 42 U.S.C. § 2000e–16(a). It's purport is that she was a victim of disparate treatment by her employer. The judgment of January 25, 1978 herein, dismissing the plaintiff's action, was vacated on appeal, and this action was remanded to this Court for further proceedings. *Bernice Roberts*, plaintiff-appellant, v. *Benjamin F. Bailar*, defendant-appellee, judgment of the United States Court of Appeals for the Sixth Circuit of July 8, 1980 in no. 78–1246, issued as a mandate on July 29, 1980. 625 F.2d 125. Such further proceedings were had before the undersigned judge on August 4, 1980.

The Court makes the following pertinent

## FINDINGS OF FACT.

1. Mrs. Roberts transferred in 1967 into the Postal Service at Knoxville, Tennessee. As a result of an examination, she was promoted to the position of personnel assistant in July, 1971.

2. (a) The plaintiff was assigned as the assistant station manager of the Burlington station of the Knoxville Post Office on April 6, 1973 and entered upon that position the following May 12. The plaintiff continued to fill that position until it was abolished on September 21, 1973.

(b) This was a supervisory position in which the supervisor was required to handle mail, a task for nonsupervisory postal workers which was covered within the contemplation of collective-bargaining agreements between the Postal Service and certain of its nonsupervisory employees. An employees' union had filed a grievance under such agreements over the handling of mail by the assistant station manager in the Burlington station, and the position was abolished from budgetary considerations and to adjust that grievance.

(c) The performance of Mrs. Roberts in this assignment was criticized by Messrs. Charles E. Blackstock and William H. Irwin, her superiors, who concluded that Mrs. Roberts was not progressing in such capacity as was to be expected normally, and that she was not performing all the functions of her position as each of them believed they should be performed. One or both of her superiors inquired frequently as to the nature of Mrs. Roberts' "problem" in doing her assigned job.

(d) On September 23, 1973 Mrs. Roberts returned to her permanent position as a personnel assistant in the Knoxville Post Office.

(e) The foregoing position at Burlington was restored on January 7, 1974, but its occupant confined himself strictly to supervising and no longer handled any mail. Mrs. Roberts did not reapply for this position, and it was filled by a white male person, Mr. P. S. Sharp. There was no evidence that the plaintiff did not reapply because of any discriminatory practices by the Postal Service or because she felt the futility under the circumstances of her reapplication.

3. (a) Mrs. Roberts applied on September 3, 1974 for the position in the Knoxville Post Office carrying the title of supervisor, office and postal services. However, the duties to be performed in this position by the successful applicant were limited to supervising computer mail-forwarding, and the selection for the position was made by a promotional advisory board.

(b) Thus selected to fill this immediately foregoing position was the aforenamed Mr. Sharp on the basis of such board's finding that he was better qualified than Mrs. Roberts because he had superior experience in working with computers.

(c) The plaintiff's workload was increased sharply soon thereafter.

(d)(1) Mrs. Roberts filed a complaint with the counsellor of the equal employment opportunity program of the Postal Service on October 31, 1974, charging that a lesser qualified male employee, rather than she, was promoted as aforesaid.

(2) Thereafter, she was charged with falsifying her record of time on-the-job and she was required to change her method of dealing with secretaries whose services she utilized from a pool.

(3) Mrs. Roberts thereupon filed a second such complaint, claiming harassment from her superiors because she had filed her first complaint.

(e) The local equal employment opportunity investigator, Mr. Otis Macklin, Jr., found and concluded that the plaintiff was better qualified for the immediately aforenamed supervisory promotion than Mr. Sharp and found and concluded also that 4 certain male employees of the Postal Service in Knoxville had been promoted in 1973 contrary to postal regulations. The initial and supplemental complaints of the plaintiff were settled and compromised by agreement; thereunder, Mrs. Roberts was promoted on June 21, 1975 to the operational position of supervisor, office and postal service with the unlimited duties usually associated with such position. However, Mr. Sharp continued for a time with the same title and performed duties limited to supervising computer mail-forwarding.

(f) At that time, 2 other supervisory positions were vacant, and Mrs. Roberts applied for promotion to postal system examiner. This position was awarded to another female employee (the secretary to the aforenamed Mr. Blackstock), which prompted the plaintiff's third complaint of discrimination (but not sex discrimination) in a matter of equal employment opportunity, a matter which has not yet been resolved administratively.

(g) Except for her tenure as assistant station manager, *supra*, Mrs. Roberts' entire experience up until that time with the Postal Service had been in administrative capacities. The position into which she transferred by agreement was operational in na-ture, and Mrs. Roberts was required to report for work at 5:00 o'clock, a. m. as opposed to 3 hours later during the time(s) she was an administrator. Her supervisor the aforenamed Mr. Irwin had constructed a walled-off office when Mrs. Roberts came to work in his section; when she was transferred therefrom, it was removed. In the Spring following her transfer, the plaintiff became embroiled in a dispute with Mr. Iwrin concerning management.

(h) About 1 week after the aforementioned controversy, on April 10, 1976, the position of supervisor, office and postal service in the Knoxville Post Office was abolished as a part of a required reduction in budget. Mr. Sharp had already been transferred to another position by that time, although he continued to perform the same functions as before. The duties performed by Mrs. Roberts for 10 months were shared by her predecessor as additional tasks and a postal clerk. No replacement employee was needed.

(i) Before leaving the aforedescribed position, Mrs. Roberts had applied for the position of area safety manager; it was awarded to a male employee. This award was made by a promotional advisory board. No member of that group deemed Mrs. Roberts as the best qualified applicant, and the female member of the board rated her as only the 4th best qualified. Mrs. Roberts filed another complaint over this rejection, claiming *inter alia* that she was not extended the usual courtesies and consideration accorded postal supervisors whose positions are being abolished.

(j) From the foregoing position, the plaintiff was transferred to the position of supervisor, mails and delivery, at the North Knoxville station of the Post Office.

4. (a) This lawsuit was commenced on August 4, 1977.

(b) The plaintiff was appointed station manager of the Burlington station of the Knoxville Post Office on August 27, 1977.

5. Mrs. Roberts was appointed on December 12, 1978 to the position of postmaster at Harriman, Tennessee and continues therein.

6. The plaintiff applied for the position of district director, consumer services, Tampa, Florida in February, 1980. The recommendation given her in this capacity by the postmaster at Knoxville was not sufficiently favorable to gain for Mrs. Roberts an interview.

7. (a) The Postal Service employs far more males than females in its Knoxville, Tennessee Post Office.

(b) In the period 1973 to mid-1980, there were from 64 to 77 male supervisors in that office and from 1 to 4 female supervisors.

8. The plaintiff Mrs. Roberts was treated less favorably than some of her fellow-employees in the Postal Service, but this was for reasons other than the fact that Mrs. Roberts is female; she made no prima facie showing that any of her supervisory employees or any member of the promotional advisory boards of the Postal Service which considered her application for promotion betrayed in any matter a predisposition toward discrimination against females.

The Court has come to the following pertinent

## CONCLUSIONS OF LAW.

A. This Court has jurisdiction of the subject matter herein, 42 U.S.C. §§ 2000e–5(f)(3), 2000e–16(d), *supra*, and of the parties.

B. All the required conditions precedent to the instituting of this action were satisfied, 42 U.S.C. §§ 2000e–5(f)(1), 2000e–16(d), *supra*, as to the plaintiff's unfair employment practice charge of October 31, 1974.

■ C. The counsellor of the Equal·Employment Opportunity Commission at the Knoxville Post Office having secured from such Post Office a conciliation agreement acceptable to such Commission on June 21, 1975, as to the charge from which such agreement emanated, such voluntary compliance with 42 U.S.C. § 2000e–16(a) removed an essential condition precedent to suit upon that charge by the plaintiff. *Cf. Dent v. St. Louis-San Francisco Railway Company*, C.A. 5th (1969), 406 F.2d 399, 403[3].

D. (a) " * * * The central focus of the inquiry in a case such as this is always whether the employer is treating 'some people less favorably because of their * * * sex * * *'. * * * " *Furnco Construction Corp. v. Waters* (1978), 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 967[4].

(b) Under a claim of disparate impact, the issue would have been whether facially neutral policies and practices had a disparate impact on females as a class of persons; here, however, under the plaintiff's claim of disparate treatment of her by the Postal Service, " * * * [p]roof of discriminatory motive [was] critical, although it [could have] in some cases [been] inferred from the mere fact of differences in treatment * * * " of the plaintiff as compared to her fellow-employees. *Teamsters v. United States* (1977), 431 U.S. 324, 335, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396, 415 [1b], n. 15.

■ E. (a) The Postal Service had the obligation to provide an equal opportunity for such· applicant to be promoted regardless of the sex of that applicant. 42 U.S.C. § 2000e–16(a).

(b) 42 U.S.C. § 2000e–16 did not guarantee a job to the plaintiff or any other person regardless of her or his qualifications; it does not require that a particular person be promoted simply because he or she is of a minority group protected by the law: what the Civil Rights statutes proscribes is a discriminatory preference for any group, majority or minority. *Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 430–431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 [4, 5] (alluding broadly to the Civil Rights Act of 1964, Title VII, 42 U.S.C. §§ 2000e *et seq.*)

F. (a) The plaintiff had the initial burden of showing actions which were taken by the Postal Service from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based" on a discriminatory criterion which is illegal. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677[8].

(b) A prima facie case of failure of the Postal Service to promote because of sex discrimination is made by showing: (i) that the plaintiff is a member of a class protected by 42 U.S.C. § 2000e–16(a); (ii) that she was qualified for promotion and might have reasonably expected selection for promotion under the defendant's on-going competitive system; (iii) that she was not promoted; and (iv) the supervisory-level employees, members of the promotional advisory board, and any other employee of the Postal Service with responsibility to exercise judgment under the promotion system of the Service betrayed in other matters a predisposition toward discrimination against members of the protected class of which the plaintiff is a member. *Cf. Pettit v. United States*, (1973), 488 F.2d 1026, 1033[7], 203 Ct.Cl. 207 (where the rule is stated with reference to racial discrimination in promotion).

(c) If the plaintiff made such a prima facie showing of discrimination on the basis of sex, the burden then would have shifted to the Postal Service to show, as to each passing-over of the plaintiff where she might have been selected, that personnel action resulting in the non-selection of the plaintiff was for some legitimate and non-discriminatory reason. *Ibid.*, 488 F.2d at 1033[8].

(d) If the Postal Service had made such a showing, the plaintiff must then have been given an opportunity to introduce evidence that the Postal Service's justification was merely a pretext for discrimination. *Furnco Construction Corp. v. Waters, supra*, 438 U.S. at 578, 98 S.Ct. at 2950, 57 L.Ed.2d at 968[8] (dealing with racial discrimination).

(e) " * * * [S]omething more is needed than proof that a qualified male was chosen over a qualified female * * * " to establish a prima facie case of discrimination on account of sex. *Olson v. Philco-Ford*, C.A. 10th (1976), 531 F.2d 474, 478[12].

■ (f) The mere fact of the failure of Mrs. Roberts to reapply for the revived position of assistant station manager at the Burlington station, standing alone, does not bar absolutely her claim of discrimination on account of her sex in this connection; but, when she did not reapply, she thereby gained the difficult burden of showing that she should have been treated as if she *had* reapplied. *Cf. Teamsters v. United States, supra*, 431 U.S. at 364–368, 97 S.Ct. at 1869–1871, 52 L.Ed.2d at 433–435; *cf.* also *Mitchell v. Mid-Continent Spring Co. of Kentucky*, C.A. 6th (1978), 583 F.2d 275, 283–284, modified on other grounds and rehearing denied (1978), 587 F.2d 841, certiorari denied (1979), 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 396.

G. This Court, not having found factually that the plaintiff was treated less favorably than some of her fellow-employees in the Postal Service on account of her sex, cannot grant her any relief. 42 U.S.C. § 2000e–5(g).

### DECISION.

It is the resulting decision of this Court that the plaintiff Mrs. Bernice Roberts hereby is DENIED * all relief herein. *See* Rule 58(1), Federal Rules of Civil Procedure.

### ON MOTION FOR ADDITIONAL FINDINGS OF FACT

This Court was only required to have made herein findings " * * * sufficient to indicate the factual basis for the ultimate conclusion. * * * " *Kelley v. Everglades Drainage Dist.* (1943), 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485, 1489. The Court is satisfied with its findings of fact herein. Rule 52(b), Federal Rules of Civil Procedure, is not intended to serve as a vehicle for a rehearing. *Davis v. Mathews*, D.C.Cal. (1978), 450 F.Supp. 308, 318[6]. The motion of the plaintiff for the making of additional findings of fact or the amendment of the judgment herein hereby is

DENIED.

■ On July 28, 1980 the clerk taxed costs against the defendant in the amount of $1,139.35, which sum was in addition to

* This disposition renders moot all outstanding motions herein.

those costs taxed against the defendant pursuant to Rule 39, Federal Rules of Appellate Procedure, by the Court of Appeals for the Sixth Circuit. The defendant failed to file a timely motion asking the Court to review such action of the clerk, see Rule 54(d), Federal Rules of Civil Procedure,[1] and such failure would ordinarily result in the Court's declining to review the taxing of such costs. See e.g. Hornsby v. Tennessee Valley Authority, D.C.Tenn. (1950), 10 F.R.D. 457. However, the time limitation imposed by Rule 54(d), supra, is not jurisdictional, Baum v. United States, C.A. 5th (1970), 432 F.2d 85, 86, and, because of the special nature of the party-defendant herein, such a review is necessary.[2]

 Costs against the United States and its officers " * * * shall be imposed only to the extent permitted by law. * * " Rule 54(d), supra. In the absence of a statute directly authorizing it, the courts are without power to tax costs against the United States or its officers, and any attempt to tax costs which have not been authorized by the Congress " * * * cannot be sustained. * * * " United States v. Chemical Foundation (1926), 272 U.S. 1, 20–21, 47 S.Ct. 1, 8, 71 L.Ed. 131, 145. Under the controlling statute, costs could be awarded the plaintiff against the defendant herein only to the extent that the plaintiff was " * * * the prevailing party * * *." 28 U.S.C. § 2412. Since the plaintiff prevailed herein only as to the appeal she took from the judgment herein of January 25, 1978, she would be entitled to recover only those costs related directly to the taking of that appeal. This would appear to include the cost of the court reporter's transcript necessary for the determination of the appeal and any of the other costs specifically listed in Rule 39(e), Federal Rules of Appellate Procedure. The plaintiff would not be entitled to recover those costs incurred in connection with the prosecution of this action in this court since she did not prevail.

In lieu of the costs taxed against the defendant by the clerk on July 28, 1980, the plaintiff will be allowed costs in the amount of $622, which sum represents $566 for the cost of the court reporter's transcript; $55 for the docket fees for the appeal;[3] and $1 for a copy of the Rules of the Sixth Circuit and its Handbook.

apparent dispute with reference to court costs. * * * "

---

1. " * * * Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the Court. * * * " Rule 54(d), Federal Rules of Civil Procedure.

2. Although the plaintiff notes that the defendant failed to seek a timely review of the taxing of costs by the clerk, it is the plaintiff who has now moved the Court " * * * to rule upon an

3. $50 thereof was payable to the court of appeals and $5 thereof was payable to the district court.