**Judy SERNA, a minor Through her parent and general guardian, Romana Serna, et al., Plaintiffs-Appellees,**

**v.**

**PORTALES MUNICIPAL SCHOOLS et al., Defendants-Appellants.**

**No. 73-1737.**

United States Court of Appeals, Tenth Circuit.

Argued March 20, 1974.

Decided July 17, 1974.

---

Charles A. Pharris, Albuquerque, N. M., for defendants-appellants.

Vilma S. Martinez, San Francisco, Cal. (Sanford Jay Rosen, Alan B. Exelrod, and Michael A. Mendelson, San Francisco, Cal., David W. Bonem, Clovis, N. M., Dan Sosa, Jr., Las Cruces, N. M., on the brief), for plaintiffs-appellees.

C. Emery Cuddy, Jr., Santa Fe, N. M., for amicus curiae State Bd. of Ed.

Before HILL and McWILLIAMS, Circuit Judges, and DURFEE,* Judge.

HILL, Circuit Judge.

Appellees in this class action are Spanish surnamed Americans seeking declaratory and injunctive relief against Portales Municipal School District for alleged constitutional and statutory violations committed under color of state law. In particular, appellees contend that appellant-school district has deprived them of their right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution and of their statutory rights under Title VI of the 1964

* Honorable James R. Durfee, United States Court of Claims, sitting by designation.

Civil Rights Act, specifically § 601, 42 U.S.C. § 2000d. Jurisdiction is invoked under 28 U.S.C. § 1343.

Pertinent facts include the following. The City of Portales, New Mexico, has a substantial number of Spanish surnamed residents. Accordingly, a sizable minority of students attending the Portales schools are Spanish surnamed. Evidence indicates that many of these students know very little English when they enter the school system. They speak Spanish at home and grow up in a Spanish culture totally alien to the environment thrust upon them in the Portales school system. The result is a lower achievement level than their Anglo-American counterparts, and a higher percentage of school dropouts.

For the 1971–72 school year approximately 34 percent of the children attending Portales' four elementary schools, Lindsey, James, Steiner and Brown, were Spanish surnamed.[1] The junior high school and senior high school enrollments of Spanish surnamed students were 29 percent and 17 percent, respectively. Unquestionably as Spanish surnamed children advanced to the higher grades a disproportionate number of them quit school.

Appellees in their complaint charge appellant with discriminating against Spanish surnamed students in numerous respects. Allegedly there is discrimination in appellants' failure to provide bilingual instruction which takes into account the special educational needs of the Mexican-American student; failure to hire any teachers of Mexican-American descent; failure to structure a curriculum that takes into account the particular education needs of Mexican-American children; failure to structure a curriculum that reflects the historical contributions of people of Mexican and Spanish descent to the State of New Mexico and the United States; and failure to hire and employ any administrators including superintendents, assistant superintendents, principals, vice-principals, and truant officers of Mexican-American descent. This failure to provide equal educational opportunities allegedly deprived appellees and all other similarly situated of their right to equal protection of the laws under the Fourteenth Amendment.

At trial appellees presented the following evidence to support their allegations. Until 1970 none of the teachers in the Portales schools was Spanish surnamed, including those teaching the Spanish language in junior and senior high school; there had never been a Spanish surnamed principal or vice-principal and there were no secretaries who spoke Spanish in the elementary grades.

Evidence was offered showing that in 1969 the report by Portales Municipal Schools to United States Commission on Civil Rights indicated that at Lindsey, the 86 percent Spanish surnamed school, only four students with Spanish surnames in the first grade spoke English as well as the average Anglo first grader. During an evaluation of the Portales Municipal Schools by the New Mexico Department of Education in 1969, the evaluation team concluded that the language arts program at Lindsey School "was below average and not meeting the needs of those children." Notwithstanding this knowledge of the plight of Spanish surnamed students in Portales, appellants neither applied for funds under the federal Bilingual Education Act, 20 U.S.C. § 880b, nor accepted funds for a similar purpose when they were offered by the State of New Mexico.

Undisputed evidence shows that Spanish surnamed students do not reach the achievement levels attained by their Anglo counterparts. For example, achievement tests, which are given totally in the English language, disclose that students at Lindsey are almost a full

---

1. Lindsey school's enrollment consisted of nearly 86 percent Spanish surnamed children while the ethnic composition of students at the other three elementary schools was 78 to 88 percent Anglo.

grade behind children attending other schools in reading, language mechanics and language expression. Intelligence quotient tests show that Lindsey students fall further behind as they move from the first to the fifth grade. As the disparity in achievement levels increases between Spanish surnamed and Anglo students, so does the disparity in attendance and school dropout rates.

Expert witnesses explained what effect the Portales school system had on Spanish surnamed students. Dr. Zintz testified that when Spanish surnamed children come to school and find that their language and culture are totally rejected and that only English is acceptable, feelings of inadequacy and lowered self esteem develop. Henry Pascual, Director of the Communicative Arts Division of the New Mexico Department of Education, stated that a child who goes to a school where he finds no evidence of his language and culture and ethnic group represented becomes withdrawn and nonparticipating. The child often lacks a positive mental attitude. · Maria Gutierrez Spencer, a longtime teacher in New Mexico, testified that until a child developed a good self image not even teaching English as a second language would be successful. If a child can be made to feel worthwhile in school then he will learn even with a poor English program. Dr. Estevan Moreno, a psychologist, further elaborated on the psychological effects of thrusting Spanish surnamed students into an alien school environment. Dr. Moreno explained that children who are not achieving often demonstrate both academic and emotional disorders. They are frustrated and they express their frustration in lack of attendance, lack of school involvement and lack of community involvement. Their frustrations are reflected in hostile behavior, discipline problems and eventually dropping out of school.

Appellants' case centered around the testimony of L. C. Cozzens, Portales' superintendent of schools. Cozzens testified that for the 1971–72 school year out of approximately 80 applications for elementary school teaching positions only one application was from a Spanish surnamed person. Nevertheless, through aggressive recruiting Portales hired six Spanish surnamed teachers. At Lindsey a program was established to teach first graders English as a second language; and with the aid of federal funds a program was also established to serve the needs of pre-school Spanish surnamed children. At the high school level an ethnic studies program was initiated which would be directed primarily at the minority groups and their problems.

The faculty was encouraged to attend workshops on cultural awareness. Altogether over a third of the entire faculty attended one or more of these workshops.

After hearing all evidence, the trial court found that in the Portales schools Spanish surnamed children do not have equal educational opportunity and thus a violation of their constitutional right to equal protection exists. The Portales School District was ordered to:

> reassess and enlarge its program directed to the specialized needs of its Spanish surnamed students at Lindsey and also to establish and operate in adequate manner programs at the other elementary schools where no bilingual-bicultural program now exists.

> .    .    .    .    .    .

> Defendant school district is directed to investigate and utilize whenever possible the sources of available funds to provide equality of educational opportunity for its Spanish-surnamed students.

> .    .    .    .    .    .

> It is incumbent upon the school district to increase its recruiting efforts and, if those recruiting efforts are unsuccessful, to obtain sufficient certification of Spanish-speaking teachers to allow them to teach in the district.

Appellants, in compliance with the court's order to submit a plan for remedial action within 90 days, thereafter

filed a proposed plan. In essence the plan provided bilingual education for approximately 150 Lindsey students in grades one through four. Each group would be given instruction in Spanish for approximately 30 minutes daily. A Title VII bilingual program would be instituted for approximately 40 pre-school children. Practically all personnel employed for this program would be Spanish surnamed. At the junior high one Spanish surnamed teacher aide would be employed to help Spanish surnamed children experiencing difficulty in the language arts. At the high school a course in ethnic studies would be offered emphasizing minority cultures and their contribution to society. In connection with this program appellants applied to the State Department of Education for state bilingual funds. These funds would provide one bilingual-bicultural instructor for the school district's other three elementary schools, and one bilingual-bicultural teacher or teacher aide at the junior high school. Seeking other sources of funding was also promised as long as the control and supervision of the programs remained with the local board of education.

Although complying with most of the court's order, appellants noted that because enrollment is declining in the Portales schools there would be fewer teachers employed next year. Thus, very likely there would not be any positions to be filled. If a position becomes vacant, however, the school district promised to make every reasonable effort to secure a qualified teacher with a Spanish surname.

Appellees thereafter filed a Motion for Hearing to hear appellees' objections to appellants' program. The motion was granted and at the hearing, after stating their objections to appellants' proposed plan, appellees introduced their own proposed bilingual-bicultural program. After reviewing both parties' programs, the trial court entered final judgment, adopting and adding the following to its prior memorandum opinion:

I. Curriculum

A. Lindsey Elementary

All students in grades 1–3 shall receive 60 minutes per day bilingual instruction. All students in grades 4–6 shall receive 45 minutes per day bilingual instruction. These times are to be considered a minimum and should not be construed to limit additional bilingual training (i. e. the Title III self contained classroom for first graders with special English language problems).

A testing system shall be devised for determining the adequacy of the above established time periods with ensuing adjustments (either an increase or decrease in bilingual instruction) as needed.

B. James, Steiner and Brown Elementary

All Spanish-speaking students in grades 1–6 shall receive 30 minutes per day of bilingual instruction. This program should be made available to interested non-Spanish speaking students as funding and personnel become available to expand the bilingual instruction.

A bicultural outlook should be incorporated in as many subject areas as practicable.

Testing procedures shall be established to test the results of the bilingual instruction and adjustments made accordingly.

C. Junior High

Students should be tested for English language proficiency and, if necessary, further bilingual instruction should be available for those students who display a language barrier deficiency.

D. High School

An ethnic studies course will be offered in the 1973–74 school year as an elective. This course should

be continued and others added in succeeding years.

The minimum curriculum schedule set forth in A through D above is not intended to limit other bilingual programs or course offerings currently available in the Portales school system or which will become available in the future.

### II. Recruiting and Hiring.

A special effort should be made to fill vacancies with qualified bilingual teachers. Recruiting should be pursued to achieve this objective.

### III. Funding

Defendants appear to have complied with the court's directive to investigate and utilize sources of available funding. Efforts should continue in seeking funding for present as well as future programs which will help achieve equality of educational opportunities for Spanish-surnamed students.

Appellants promptly appealed, positing two grounds for reversal. First, appellants suggest that appellees neither have standing nor are suitable parties under Rule 23 to maintain this suit as a class action; second, that failure to afford a program of bilingual instruction to meet appellees' needs does not deny them equal protection of the law when such needs are not the result of discriminatory actions.

■ Appellants' first argument is that appellees are not suitable parties under Rule 23 to maintain this suit as a class action. In particular, appellants argue that appellees have failed to show that there are questions of law or fact common to the alleged class and that the claims of the representative parties are typical of the claims or defenses of that class. We disagree. National origin discrimination in equal educational opportunities is the alleged basis for this lawsuit. As the complaint and support-

ing evidence point out, 26 percent of the Portales school population are Spanish surnamed. Nevertheless, prior to the lawsuit there were no Spanish surnamed board of education members, teachers, counselors, or administrators. Nor was any attempt made by Portales school personnel to provide for the educational needs of Spanish surnamed children. These allegations clearly raise questions common to the class which appellees represent and are typical of the claims of that class. We therefore are convinced that appellees fully meet the rigid requirements of Rule 23 and thus properly filed this suit as a class action. Bossier Parish School Bd. v. Lemon, 370 F.2d 847 (5th Cir. 1967), cert. den'd, 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350.

Appellants also challenge appellees' standing to bring this suit because appellees have failed to show a personal stake in the outcome of this action. We cannot agree; the complaint was filed by parents of school age children and the Chicano Youth Association. Each minor child is allegedly a student in the Portales schools or was excluded therefrom. The complaint alleges that those and all Spanish surnamed school children have been subject to discrimination by the school district. We believe appellees have satisfactorily alleged that appellants' discriminatory actions caused them injury in fact and hence they have standing to sue. Flast v. Cohen, 392 U. S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Bossier Parish School Bd., *supra*.

Appellants next challenge the district court's holding that the Portales municipal schools denied appellees equal protection of the law by not offering a program of bilingual education which met their special educational needs. In light of the recent Supreme Court decision in Lau v. Nichols, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974), however, we need not decide the equal protection issue. *Lau* is a case which appellants admit is almost identical to the present

one. In *Lau* non-English speaking Chinese students filed a class suit against the San Francisco Unified School District. The facts showed that only about half of the 3,457 Chinese students needing special English instruction were receiving it. The Chinese students sought relief against these unequal educational opportunities which they alleged violated the Fourteenth Amendment. The district court denied relief, and the Court of Appeals affirmed, holding that there was no violation of the equal protection clause of the Fourteenth Amendment nor of § 601 of the Civil Rights Act of 1964. The Supreme Court, without reaching the equal protection clause argument but relying solely on § 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, reversed the Court of Appeals.

The Supreme Court notes that the State of California requires English to be the basic language of instruction in public schools. Before a pupil can receive a high school diploma of graduation he must meet the standards of proficiency in English. A student who does not understand the English language and is not provided with bilingual instruction is therefore effectively precluded from any meaningful education. The Court concludes that such a state imposed policy, which makes no allowance for the needs of Chinese-speaking students, is prohibited by § 601. The reason for this is that § 601 bans discrimination based "on the ground of race, color, or national origin" in "any program or activity receiving Federal financial assistance." In reaching its conclusion the Court relies heavily upon HEW regulations that require school systems to assure that students of a particular national origin are not denied the opportunity to obtain the education generally obtained by other students in the system. In particular the Court noted that HEW has ordered school systems to take remedial steps to rectify language deficiency problems.

Where inability to speak and understand the English language excludes national origin-minority group children from effective participation in the educational program offered by a school district, the district must take affirmative steps to rectify the language deficiency in order to open its instructional program to these students. 35 Fed.Reg. 11595 (1970).

Finally, the Court reasons that because the San Francisco school district contractually agreed to comply with Title VI of the 1964 Civil Rights Act and all HEW regulations, the federal government can fix the terms on which its money allotments to that district will be disbursed. The case was accordingly remanded to the Court of Appeals for the fashioning of appropriate relief.

As noted above, the factual situation in the instant case is strikingly similar to that found in *Lau*. Appellees are Spanish surnamed students who prior to this lawsuit were placed in totally English speaking schools. There is substantial evidence that most of these Spanish surnamed students are deficient in the English language; nevertheless no affirmative steps were taken by the Portales school district to rectify these language deficiencies.

The trial court noted in its memorandum opinion that appellees claimed deprivation of equal protection guaranteed by the Fourteenth Amendment and of their statutory rights under Title VI of the 1964 Civil Rights Act, specifically § 601. While the trial court reached the correct result on equal protection grounds, we choose to follow the approach adopted by the Supreme Court in *Lau*; that is, appellees were deprived of their statutory rights under Title VI of the 1964 Civil Rights Act. As in *Lau*, all able children of school age are required to attend school. N.M.Const. Art. XII, § 5. All public schools must be conducted in English. N.M.Const. Art. XXI, § 4. While Spanish surnamed children are required to attend school, and if they attend public schools the courses must be taught in English, Portales school district has failed to insti-

tute a program which will rectify language deficiencies so that these children will receive a meaningful education. The Portales school curriculum, which has the effect of discrimination even though probably no purposeful design is present, therefore violates the requisites of Title VI and the requirement imposed by or pursuant to HEW regulations. *Lau, supra.*

■■ Appellants argue that even if the school district were unintentionally discriminating against Spanish surnamed students prior to institution of this lawsuit, the program they presented to the trial court in compliance with the court's memorandum opinion sufficiently meets the needs of appellees. The New Mexico State Board of Education (SBE), in its Amicus Curiae brief, agrees with appellants' position and argues that the trial court's decision and the relief granted constitute unwarranted and improper judicial interference in the internal affairs of the Portales school district. After reviewing the entire record we are in agreement with the trial court's decision. The record reflects a long standing educational policy by the Portales schools that failed to take into consideration the specific needs of Spanish surnamed children. After appellants submitted a proposed bilingual-bicultural program to the trial court a hearing was held on the adequacies of this plan. At this hearing expert witnesses pointed out the fallacies of appellants' plan and in turn offered a more expansive bilingual-bicultural plan. The trial court thereafter fashioned a program which it felt would meet the needs of Spanish surnamed students in the Portales school system. We do not believe that under the unique circumstances of this case the trial court's plan is unwarranted. The evidence shows unequivocally that appellants had failed to provide appellees with a meaningful education. There was adequate evidence that appellants' proposed program was only a token plan that would not benefit appellees. Under these circumstances the trial court had a duty to fashion a program which would provide adequate relief for Spanish surnamed children. As the Court noted in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971), "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." Under Title VI of the Civil Rights Act of 1964 appellees have a right to bilingual education. And in following the spirit of *Swann, supra,* we believe the trial court, under its inherent equitable power, can properly fashion a bilingual-bicultural program which will assure that Spanish surnamed children receive a meaningful education. *See also* Green v. School Bd., 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Brown v. Bd. of Education (II), 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). We believe the trial court has formulated a just, equitable and feasible plan; accordingly we will not alter it on appeal.

■ The New Mexico State Board of Education stresses the effect the decision will have on the structure of public education in New Mexico. It is suggested that bilingual programs will now be necessitated throughout the state wherever a student is found who does not have adequate facility in the English language. We do not share SBE's fears. As Mr. Justice Blackmun pointed out in his concurring opinion in *Lau,* numbers are at the heart of this case and only when a substantial group is being deprived of a meaningful education will a Title VI violation exist.