**Stephanie OTERO et al.,
Plaintiffs-Appellants,**

v.

**MESA COUNTY VALLEY SCHOOL
DISTRICT NO. 51 et al.,
Defendants-Appellees.**

No. 76–1174.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 17, 1977.

Decided Oct. 31, 1977.

Rehearing Denied Feb. 28, 1978.

Morris J. Baller, San Francisco, Cal. (Vilma S. Martinez, Mary R. Mendoza, San Francisco, Cal., and R. Pete Reyes, Denver, Colo., of Mexican American Legal Defense and Educational Fund, Federico Pena of Chicano Education Project and Arthur S. Lucero of Colorado Rural Legal Services, on the brief), for plaintiffs-appellants.

John W. Groves, Grand Junction, Colo. (and Jon E. Getz of Nelson, Hoskin, Groves & Prinster, P. C., Grand Junction, Colo., on the brief), for defendants-appellees.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

The plaintiffs-appellants are nine Mexican-American school children who attend, or at one time did attend, public schools located in the Mesa County Valley School District No. 51. The defendants-appellees are District No. 51, the members of its Board of Education, and numerous school officials in both their individual and official capacities.

The plaintiffs charged the defendants with a variety of discriminatory practices in the conduct of the educational program of District 51, all of which allegedly has an adverse effect ′on the Mexican-American student. More specifically, in their amended complaint the plaintiffs alleged that the defendants had discriminated against Mexican-American students on the basis of race and national origin in connection with both the curriculum offered the students and in connection with the employment practices of the school district in the hiring of teachers and supporting personnel, in violation of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and the Equal Educational Opportunities Act of 1974. 20 U.S.C. § 1703. A motion for certification of the case as a class action under Fed.R.Civ.P. 23(b)(2) was heard and granted.

The defendants by answer generally denied discrimination, alleged a number of affirmative defenses, one of which was that "[p]laintiffs, as school children, lack standing to assert a claim based upon discrimination in personnel hiring and practices."

The trial of this matter was to the court, and lasted some two weeks. Following trial the parties filed lengthy briefs, and some time later the trial judge entered his Memorandum Opinion in which he denied all relief to the plaintiffs. Judgment was thereafter duly entered in favor of the defendants.

The Memorandum Opinion of the trial court appears as *Otero v. Mesa County Valley School District No. 51,* 408 F.Supp. 162

(D.Colo.1975). Reference should be made to the trial court's Memorandum Opinion for background facts, which will not be repeated here. The trial court found that in fact there was no significant number of Mexican-American children with substantial English language problems which to any real degree inhibited their educational achievement. The trial court further held that in any event the plaintiffs had no right under the Fourteenth Amendment to a bilingual-bicultural educational program. In so holding the trial court was fortified by our opinion in *Keyes v. School District No. 1*, 521 F.2d 465 (10th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657 (1976), which was filed while the instant case was under advisement in the trial court.

Additionally, the trial court held that because of a lack of numbers, the plaintiffs had not brought themselves under the so-called *Lau-Serna* doctrine. *See Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1973) and *Serna v. Portales Municipal Schools*, 499 F.2d 1147 (10th Cir. 1974). The plaintiffs do not appeal that part of the trial court's order and judgment which refused to require the defendants to institute a bilingual-bicultural educational program.

As indicated, one of plaintiffs' claims related to allegedly discriminatory hiring practices on the part of the defendants, which resulted in a staff of teachers and supporting personnel containing a disproportionately low percentage of Mexican-Americans. The trial court rejected this particular claim of the plaintiffs on several alternative grounds: (1) The plaintiffs, as school children, have no standing to challenge the defendants' hiring practices; (2) if the plaintiffs have standing, they did not establish, *prima facie*, any instances of discrimination by the defendants; (3) if the plaintiffs do have standing, and if they did make a *prima facie* showing of discrimination, the defendants by their evidence "completely rebutted any suggestion of discrimination," and (4) even if the plaintiffs have standing and prevailed on the discrimination question, the defendants have already adopted an affirmative action program to increase their employment of Mexican-Americans, and hence there is no present need for an injunction. Plaintiffs now appeal that part of the trial court's order and judgment which denied them relief on their claim of discriminatory hiring practices.

■ The trial court, as its first ground for rejecting plaintiffs' claim of discriminatory hiring practices, held that the plaintiffs lacked standing to maintain the proceeding. More specifically, after all the evidence was in, the trial court held, in effect, that even assuming discriminatory hiring practices by the School District, the plaintiffs had no standing to challenge them. We do not agree. Though a would-be teacher in School District No. 51 who had been discriminated against because of his race might be the most logical person to challenge the district's hiring practices, still such a person is not the only one who has a sufficient interest to institute such an action. Here the plaintiffs alleged that because of the school district's discriminatory employment practices, there is a disproportionately low number of Mexican-American teachers and other supporting personnel in the school system, and that this has an adverse effect upon the educational opportunity afforded the Mexican-American pupil. Counsel for the school district lend credence to this educational theory by stating that in 1973 the school district "adopted" such theory, and "acted" thereon by the adoption and implementation of a minority recruitment program. In any event, we believe that the plaintiffs sufficiently alleged, and showed upon trial, "injury in fact" and have a sufficient "personal stake in the outcome of the controversy" to give them standing. *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Certainly the plaintiffs' allegations, and the evidence offered in support thereof, constitute at the least an identifiable trifle, and in our view much "more than an ingenious academic exercise in the conceivable." *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). We be-

lieve our holding that the plaintiffs do have standing is in accord with *Serna v. Portales Municipal School,* 499 F.2d 1147 (10th Cir. 1974), and squares with the rationale of *Chicano Police Officers Ass'n v. Stover,* 526 F.2d 431 (10th Cir. 1975), vacated on other grounds, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976).

■ In its Memorandum Opinion the trial court reasoned that because the plaintiffs did not even argue that there was segregation, and because they had lost on their claim that they were entitled to a bilingual-bicultural curriculum, they somehow lost standing to challenge the hiring practices of the school district. With such reasoning we are not in accord. In sum, we believe our holding that these plaintiffs have standing is well within the guidelines laid down by the numerous expressions from the Supreme Court on the subject of standing, including *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), which was relied on to a considerable degree by the trial court.

In support of its claim of discriminatory hiring practices, the plaintiffs offered considerable statistical evidence, along with other evidence designed to show individual cases of discrimination. Also, the plaintiffs presented evidence of various recruiting and hiring practices which they claim have a discriminatory impact, such as decentralized hiring, lack of hiring standards, word of mouth recruitment, giving first notice of vacancies to present employees of the district, making recruiting trips for teachers to college with few Mexican-American education graduates, selective enforcement of application requirements, the use of subjective standards in hiring. The defendants presented evidence of their own which consisted of an attack on the plaintiffs' statistics, evidence in rebuttal of individual cases of alleged discrimination, evidence designed to show that the district's hiring practices are rational and that the racial make-up of its work force resulted from something other than discrimination. The foregoing reference to the type of evidence adduced by the plaintiffs and the defendants at trial is admittedly only cursory, but does indicate the breadth of plaintiffs' claims, and the nature of the defense thereto.

As above mentioned, the trial court made a series of alternative findings and conclusions, which held, in effect, that the defendants had not engaged in discriminatory employment practices. The trial court made such finding after first recognizing that "[S]tatistically, District 51 doesn't look good." On the issue of discriminatory hiring practices, the trial court found as follows:

Accepting for the purpose of this discussion that plaintiffs have standing and that statistical data constitutes a prima facie showing of discrimination, and saying arguendo that plaintiffs laid the Sabol groundwork (which they didn't) defendants completely rebutted any suggestion of discrimination on the part of District 51. Every reasonable effort has been made to hire qualified Mexican-American teachers, but there just aren't very many of them available, and with the nation-wide push on bilingual education, those teachers are blessed with a seller's market. District 51 has recruited throughout the southwest, and no qualified Mexican-American teacher who wanted to teach in District 51 has been turned down. As to the more menial jobs, I can't fault District 51 for turning down bus drivers who have bad driving records, and secretaries who can't type. *Proof of failure to employ qualified minority applicants for other jobs is equally weak.*

The foregoing is about the only portion of the trial court's 25-page Memorandum Opinion which could be considered as constituting findings of fact relating to plaintiffs' claim of discriminatory hiring by the defendants. In fairness, we recognize that in the trial court the plaintiffs' primary complaint concerned the lack of a bilingual-bicultural curriculum. And the trial court's Memorandum Opinion was chiefly concerned with that particular matter. However, the issue of discriminatory hiring was before the trial court, and, as indicated, is

the only issue before us on this appeal. And we conclude that the trial court's findings of fact on the discriminatory hiring issue are insufficient.

Fed.R.Civ.P. 52(a) provides that in all actions tried without a jury the court "shall find the facts specially and state separately its conclusions of law therein." That rule further provides that if a trial court files an opinion or memorandum, it is sufficient if the finding of fact and conclusions of law are set forth therein.

Findings of fact by a trial court should be sufficient to indicate the factual basis for the court's general conclusion as to ultimate facts. Also, the findings should indicate the legal standards against which the evidence was measured. And the findings should be broad enough to cover all material issues. *Schneiderman v. United States,* 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943); *Kelley v. Everglades Drainage District,* 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943); *Deal v. Cincinnati Board of Education,* 369 F.2d 55 (6th Cir. 1966); and *Woods Construction Co. v. Pool Construction Co.,* 314 F.2d 405 (10th Cir. 1963). See also *Findings in the Light of the Recent Amendments to the Federal Rules of Civil Procedure,* 8 F.R.D. 271.

In our view the trial court's findings of fact relative to the discrimination issue do not fully comply with Rule 52(a). They do not cover all of the material issues raised by the discrimination charge. Nor do they reveal in sufficient detail the factual basis for the trial court's ultimate finding of no discrimination. The trial court did not specify the statistics on which it relied in concluding that the district "doesn't look good." * The court made no findings as to the racial impact of the various hiring practices of the district. The court concluded that no qualified Mexican-American teacher applicant was turned down and indicated that there was no proof of failure to employ qualified minority applicants for other positions. But the court made no findings of fact on the individual instances of alleged

discrimination and failed to resolve many conflicts in the evidence on this point. In such situation we find ourselves unable to make a meaningful review.

Judgment vacated and cause remanded with directions that the trial court make new findings of fact and conclusions of law on the matter of discriminatory hiring practices, and to then enter judgment in accord with such new findings and conclusions.

BREITENSTEIN, Circuit Judge, dissenting.

The majority reverses on two grounds (1) standing to maintain the claim of employment discrimination and (2) inadequacy of the trial court's findings. The decision of the trial court that the plaintiffs lacked standing on the employment issue was made after a prolonged trial on the merits at which full opportunity was given all parties to present evidence and arguments. In my opinion the record does not show employment discrimination at the time of trial or threatened in the future. The plaintiffs lose both on the standing issue and on the merits. No good purpose is served by any technical discussion of the difference between the two approaches. A remand results in nothing but further controversy over an issue which is best put at rest. I would affirm.

---

* On remand, in considering the statistical evidence, the district court will have the guidance of the recent Supreme Court decision. *Hazel-*

*wood School District v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).