MARTIN LUTHER KING JUNIOR ELEMENTARY SCHOOL CHILDREN residing in the Green Road Housing Project, and those at that scattered site, low income project who are or will be eligible to attend that Ann Arbor School, including, Michael, Anthony, Gerard and Tyrone Blair, children of Annie Blair, Temkca S., Charmin, Roy, and Elisha Brownlee, children of Carrie Brownlee, Dwayne Kihilee, and Tito Brenen, children of Janice Brenen, Carolyn, Gary, Tyrone and Jacqueline Davis, children of Corine Davis, by their mothers, as next friends, Plaintiffs,

v.

The MICHIGAN BOARD OF EDUCATION, the Michigan Superintendent of Public Instruction, and their employees, agents and assignees in their official capacities, the Ann Arbor School District Board, the Ann Arbor School Superintendent Harry Howard, the Ann Arbor School Pupil Personnel Director Hazel Turner, Martin Luther King Junior Elementary School Principal Rachel Schreiber, and their employees, agents, and assignees in their official capacities as well as named individual Ann Arbor public school administrative and teaching personnel in their personal capacities, Defendants.

Civ. A. No. 7–71861.

United States District Court, E. D. Michigan, S. D.

Dec. 29, 1978.

Gabe Kaimowitz and Kenneth Lee Lewis, Michigan Legal Services, Detroit, Mich., for plaintiffs.

Patrick J. Devlin, Asst. Atty. Gen., Lansing, Mich., for state defendants.

John B. Weaver, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for Ann Arbor defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is a civil rights case. The factual background and procedural history of the case have been set forth at length in *Martin Luther King Jr. Elementary School Children v. Michigan Board of Education et al.,*

451 F.Supp. 1324 (E.D.Mich.1978), and will not be repeated here. This case is before this court on defendants' motion to dismiss plaintiffs' amended complaint or to strike portions thereof on the grounds that the amended complaint does not comply with this court's memorandum opinion and order of May 26, 1978, which required the filing of an amended complaint. For reasons set forth more fully herein, defendants' motion to dismiss is granted unless an amendment complying with this memorandum is filed within thirty (30) days.

By memorandum opinion and order dated May 17, 1978, all counts of plaintiffs' complaint were dismissed with the exception of count three. In count three plaintiffs alleged that their right to equal educational opportunity, as defined in 20 U.S.C. § 1703(f), was being violated by defendants. Section 1703(f) states:

No state shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by . . . the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs.

By memorandum opinion and order dated May 26, 1978, count three of plaintiffs' complaint was dismissed unless plaintiffs filed an amended complaint which stated a cause of action under 20 U.S.C. § 1703(f), complied with the requirements of Fed.R.Civ.P. 8(a)(2), and set forth the statements requested by defendants in their motions.[1] If plaintiffs chose to file an amended complaint, they were specifically directed to

1. In its Motion to Dismiss, or in the Alternate (sic), Motion to Strike or File More Definite Statement, filed on October 4, 1977, the State of Michigan defendant requested the following statements.
   (1) Which plaintiffs are charging which defendants with a violation of 20 U.S.C. § 1703(f) and in what fashion has each defendant violated the statute with regard to each plaintiff.
   (2) State how the plaintiffs are economically disadvantaged.
   (3) State which plaintiffs have what language barriers.
   (4) State which defendants did not take what action with regard to which plaintiffs.

In their Motion to Dismiss or, in the Alternative, to Strike and for More Definite Statement, filed on September 26, 1977, the Ann Arbor defendants requested the following statements.
   (1) The identity of each plaintiff alleged to have a language barrier impeding his or her participation in instructional programs.
   (2) The identity of each student whose native language is not English.
   (3) The "appropriate action" which plaintiffs allege was not taken.
   (4) The defendant alleged to have a duty to take such "appropriate action."

state (1) the language barriers it was alleged that defendants should overcome as to each of the plaintiffs, (2) the nature of the appropriate action that each defendant should take as to each plaintiff, and (3) the cause of the alleged denial of equal educational opportunity.

From statements made by plaintiffs' counsel during oral argument of this motion, it appeared that the instructions contained in the memorandum opinion and order of May 26, 1978 might have been inadequate and in certain respects confusing. This memorandum opinion and order represents this court's final attempt to instruct plaintiffs on what allegations are required to state a cause of action under 20 U.S.C. § 1703(f). Plaintiffs' failure to file a second amended complaint in compliance with this order within 30 days will result in automatic dismissal of the complaint with prejudice.

*Parties*

■ Defendants have moved to strike, among other things, paragraphs 12 and 13 of the amended complaint on the ground that defendants Schreiber and Turner were dismissed from this lawsuit in this court's memorandum opinion and order of May 17, 1978. The plaintiffs' claim of tortious abrogation of constitutional rights by defendants Schreiber and Turner in their personal and official capacities was dismissed by this court in its May 17, 1978, opinion as were all of plaintiffs' constitutional causes of action. By dismissing plaintiffs' claim for tortious abrogation of constitutional rights, it was not the intent of this court to dismiss defendants Schreiber and Turner from plaintiffs' claim under § 1703(f), however, this court will consider whether any of the natural persons named as defendants in this suit can be sued under § 1703(f).

Section 1720(a) defines "educational agency", the entity upon which § 1703(f) places the duty to overcome language barriers, to mean "a local educational agency or

a 'State educational agency' ". "Local educational agency" is defined by 20 U.S.C. §§ 881(f) and 1720(b), in pertinent parts, to mean "a public board of education or . . . any other public institution or agency having administrative control and direction of a public elementary or secondary school." "State educational agency" is defined by 20 U.S.C. §§ 1720(a) and 881(k), in pertinent parts, to mean "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary and secondary schools . . ." With the exception of the state officer specified in § 881(k), no natural persons are encompassed by the statutory definition of educational agency. For this reason all of the Ann Arbor defendants who are natural persons must be excluded from any amended complaint filed by plaintiffs.

*Language Barrier* ([A]n education agency [must] take appropriate action to *overcome language barriers* that impede equal participation by its students in its instructional programs.)

■ Plaintiffs must identify their language barriers. Paragraphs 5, 24, 25, 30, and 32 of the amended complaint do provide such identifying information.[2] However, paragraphs 24, 25, 30, and 32 also contain references to cultural characteristics of plaintiffs. Cultural characteristics of plaintiffs are irrelevant to a cause of action under § 1703(f). Section 1703(f) cannot be used as a vehicle to attack all the problems engendered by poverty and racial discrimination even if these are problems with which the plaintiffs are confronted. This court does not intend to permit an expansion of the duty created by § 1703(f) to include elimination of what plaintiffs identify as cultural and economic barriers. For this reason references to culture and economics must be eliminated from any amended complaint filed if it is to comply with Fed.R.Civ.P. 8.[3]

**2.** Plaintiffs also assert that paragraphs 23, 31, 37–39, and 41 also relate to the identification of their language barriers. This court finds none of these allegations to be relevant to the identification of language barriers.

**3.** Such references are also contained in paragraphs 6, 15, 17, 18, 19, 22, 26, 27, 29, 31, 33–35, 37–39, and 44.

*Interference with Equal Participation* ([A]n educational agency [must] take appropriate action to overcome language barriers that *impede equal participation by its students in its instructional programs.*)

Plaintiffs must next allege how the language barrier impedes their equal participation in the instructional programs of the defendant educational agencies. Paragraphs 4, 6, 8–13, 21, 23, and 32 adequately set forth such allegations. However, paragraph 6 also contains a reference to cultural barriers which is irrelevant and should be eliminated.

*Appropriate Action* ([A]n educational agency [must] *take appropriate action* to overcome language barriers that impede equal participation by its students in its instructional programs.)

Plaintiffs must set forth the appropriate action defendants have allegedly failed to take and which defendants have failed to take what action. Although paragraphs 8–13, 20, 26, 27, 28, 29, 33, 34, 35, and 36 pertain to this element of § 1703(f), none of those paragraphs concisely and specifically describes the action plaintiffs allege to be appropriate which defendants have not taken. Paragraph 34 comes the closest to being adequate in this regard with respect to the Ann Arbor defendants, however, the various acts described in that paragraph are not specific as to their substantive content. Paragraph 36 suffers from the same lack of specificity with respect to the identity of funding sources to which the Michigan defendant has failed to apply. Unless plaintiffs are satisfied to sue for the failure of defendants to take any good faith action, in the forms suggested in paragraph 34, to overcome their language barrier, plaintiffs must amend their allegations on the element of appropriate action to specifically identify the substance of the actions they think are appropriate and should be taken and which defendant is responsible for taking what action. In addition, all references

to culture or economics contained in paragraphs 26, 27, 29, 33, 34, and 35 should be eliminated.

*Race* ("No state shall deny equal educational opportunity to an individual *on account of his or her race,* color, sex, or national origin by . . . the failure . . . to overcome . . . language barriers . . .")

Finally, plaintiffs must identify the connection between the defendants' failure to take appropriate action and a classifying criterion of race, color, sex, or national origin. At oral argument plaintiffs' counsel stated that it was their intent to allege a connection between defendants' omissions and race. The efforts plaintiffs have made in this regard are inadequate.

The initial phrase of § 1703 only prohibits denial of equal educational opportunity "on account of" race by any of the six acts or omissions thereafter enumerated, including the failure to overcome language barriers. On its face the language used to state this prohibition appears to apply to those denials of equal educational opportunity perpetrated with the intent to discriminate against persons of a particular race. However, a more careful analysis of judicial decisions and legislative history casts doubt on this interpretation.

It is true, as defendants assert, that the Supreme Court required evidence of racially discriminatory motive or purpose, as opposed to racially discriminatory effect, to establish liability for racial discrimination in employment under the Fourteenth Amendment. *Washington v. Davis,* 426 U.S. 229, 239–41, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). However, the present action is not brought under the Constitution but under a statute, the Equal Educational Opportunities Act of 1974. 20 U.S.C. § 1703(f). Reported decisions involving § 1703(f) have not discussed purposeful racial discrimination as an element required to be proven in order to establish liability.[4] *Cintron v.*

4. The United States Court of Appeals for the Sixth Circuit has explicitly declined to impose any special obligations under that act until the meaning of a provision is at issue in a case

before them. *United States v. School District of Ferndale et al.,* 577 F.2d 1339, 1346 (6th Cir. 1978).

*Brentwood Union Free School District et al.*, 455 F.Supp. 57 (E.D.N.Y.1978); *Otero v. Mesa County Valley School District No. 51 et al.*, 408 F.Supp. 162 (D.Colo.), *rev'd and remanded on other grounds*, 568 F.2d 1312 (10th Cir. 1977). Furthermore, statutes similar in purpose and language to § 1703(f) have been found violated by discriminatory effect even though no purposeful design is present.

In *Lau v. Nichols et al.*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974), the Court held that the failure of the San Francisco school system to provide English language instruction to approximately 1,800 students of Chinese ancestry who did not speak English, or to provide them with other adequate instructional procedures, violated 42 U.S.C. § 2000d. After reviewing HEW regulations promulgated pursuant to 42 U.S.C. § 2000d-1 Justice Douglas, writing for the Court, specifically stated that section 2000d barred discrimination "which has that *effect* even though no purposeful design is present . . ." *Lau, supra* at 568, 94 S.Ct. at 789. Section 2000d prohibits discrimination under any program or activity receiving federal financial assistance "on the ground of race."

In *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Court stated that the language of Title VII, 42 U.S.C. §§ 2000e, *et seq.*, made plain Congressional objectives to achieve equality of employment opportunity and remove barriers that have operated in the past to favor an identifiable group of white employees. The Court went on to state that practices, procedures, or tests neutral on their face or even in terms of intent could still violate Title VII if they operate to "freeze" the status quo of prior discriminatory practices. The specific section of Title VII dealt with by the Court in *Griggs*, § 2000e-2(a)(2), prohibits certain types of employment discrimination "because of [an employee's or applicant's] race."

■ Neither the language in § 2000d nor § 2000e-2(a)(2) is significantly different from that of § 1703(f) with respect to the connection required between prohibited acts or omissions and race. Yet, both sections can be violated by acts or omissions having a racially discriminatory effect. Furthermore, during the course of legislative hearings held in 1972 on the bill which was eventually passed as § 204 of the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1703, Elliot L. Richardson, then Secretary of HEW, stated that subsection (f) explicitly declared what had been previously construed to be a legal duty established by 42 U.S.C. § 2000d.[5] Given the present judicial interpretations of § 1703(f) and the opinions of the United States Supreme Court concerning statutes which are closely analogous to § 1703(f), this court is forced to conclude, contrary to the Ann Arbor defendants' assertion, that the connection between failure to take appropriate action and race need not be in the form of an allegation of racially discriminatory purpose but may also take the form of an allegation of racially discriminatory effect.

Plaintiffs assert that paragraphs 26, 27, 28, 32, 33, 34, and 40 of the amended complaint pertain to the connection between the failure to take appropriate action and race. Paragraph 40 does not even allege acts and omissions of defendants which are relevant to overcoming language barriers. Rather it concerns acts and omissions which could fairly be characterized as pertaining to irrelevant economic and cultural barriers allegedly faced by plaintiffs. None of the other paragraphs contain allegations concerning plaintiffs' race. Although paragraphs 14, 16, 23, and 41 pertain to the connection between the defendants' alleged failure to take appropriate action and the race of plaintiffs they do not allege the type of "on account of" connection required by § 1703(f). An adequate connection between race and the defendants' omissions

---

5. *Hearings on H.R. 13915 Before the House Comm. on Education and Labor*, 92d Cong., 2d Sess. 28 (1972).

must be alleged in order to state a claim under § 1703(f).

In summary, plaintiffs' amended complaint is hereby dismissed unless, within thirty (30) days, a second amended complaint is filed which conforms with this memorandum opinion and order.

So ordered.