**Homer C. BLANKENSHIP, an individual, and Herzfeld's Beauty & Barber Supply of Muskogee, Inc., an Oklahoma Corporation, Plaintiffs-Appellants,**

v.

**Gene HERZFELD, an individual; Herzfeld's Beauty & Barber Supply, a partnership; Herzfeld's Beauty & Barber Supply, Inc., an Oklahoma Corporation, Oklahoma City; Helene Curtis Industries, Inc., a foreign corporation; and Herzfeld's Beauty & Barber Supply of Amarillo, Inc., a foreign corporation, Defendants-Appellees.**

No. 80–1389.

United States Court of Appeals, Tenth Circuit.

Argued March 17, 1981.

Decided Oct. 9, 1981.

Frank M. Hagedorn of Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl., for plaintiffs-appellants.

Floyd L. Walker of Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl. (John S. Zarbano of Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl., with him on the brief for defendant-appellee Helene Curtis; David O. Harris, Tulsa, Okl., and Jack Mattingly, Seminole, Okl., on the brief for Herzfeld defendants-appellees), for defendants-appellees.

Before McWILLIAMS, BARRETT and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Plaintiff Herzfeld's Beauty & Barber Supply of Muskogee (HOM) brought this action under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.[1] The district court granted defendants' motion to dismiss after plaintiff presented its evidence. We affirm in part and reverse in part.

## I.

### FACTUAL BACKGROUND

HOM is an Oklahoma corporation, operating out of Muskogee, Oklahoma, that dis-

---

1. Section 1 of the Sherman Act provides in pertinent part:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . ."

Section 2 in pertinent part specifies:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor . . . ."

tributes beauty and barber supplies. The company is owned by Carl Blankenship. Blankenship purchased the stock of HOM from Virgil Herzfeld in 1971. As part of that agreement, Blankenship sold to Virgil Herzfeld his interests in both Herzfeld's Beauty & Barber Supply, Inc., an Oklahoma corporation distributing beauty and barber supplies out of Oklahoma City, Oklahoma, and Herzfeld's Beauty & Barber Supply of Amarillo, Inc., a foreign corporation operating out of Amarillo, Texas. The officers and stockholders of the Oklahoma City and Amarillo stores include Virgil Herzfeld and his sons Gene and Kenneth. Gene and Kenneth Herzfeld also own Herzfeld's Beauty & Barber Supply, a partnership distributing beauty and barber supplies out of Tulsa, Oklahoma. The Amarillo, Oklahoma City, and Tulsa stores, along with Gene Herzfeld, are defendants in this case. They hereinafter will be referred to as the Herzfeld defendants. The other defendant is Helene Curtis Industries, Inc. (Helene Curtis), a manufacturer of beauty supplies and cosmetics. The Herzfeld stores sold Helene Curtis products along with the products of many other beauty supply manufacturers.

Prior to the sale of HOM to Blankenship, a territorial agreement existed between the four stores under which each store called only on customers in its own specified geographical area. Although the parties dispute whether this arrangement persisted after Blankenship's purchase of HOM, it is apparent that HOM continued to restrict its area of distribution until the events giving rise to this lawsuit occurred.

The stores also engaged in other cooperative business practices. They made joint purchases, paid their orders under the name of one store, and divided the goods among the four stores to attain volume discounts and to win prizes for volume purchases. When one store was out of a requested item, another store would ship the goods to the customer. The requesting store was billed at cost and received the profit from the sale. Blankenship also handled the group health and accident insurance for all the stores.

In 1975, this cooperative harmony began to unravel. Blankenship attempted to expand HOM's sales area through efforts to hire sales personnel of other beauty and barber supply companies. Blankenship intended for them to work the same territory they had worked during their previous employment. Blankenship spoke to Jim Russian, a salesman for Bottenfield's, a beauty and barber supply distributor in Kansas and Oklahoma, and Lynn Capps, a salesman recently fired by Gene Herzfeld from his sales job with Herzfeld's of Tulsa. Capps went to work for HOM.

Capps testified that Gene Herzfeld threatened him with legal prosecution for shortages Capps accrued in his account while working for Herzfeld's of Tulsa unless Capps stopped working for HOM in the Tulsa territory. Capps further testified that Gene told him "he was just protecting what was his," that Gene's brother Ken Herzfeld "would take care of Mr. Blankenship," and that if Capps continued to work the territory, Blankenship would lose the Helene Curtis distributorship. Rec., supp. vol. II, at 544. Similarly, Blankenship testified that Gene called him and said that because Capps was working his old territory, he and his brothers were "going to be out to get you out of business, [and] we're going to do everything we can against you." *Id.* at 51.

It is undisputed that Gene Herzfeld contacted Helene Curtis regarding the Capps "problem." He first spoke to Mike Goldman, President of the Professional Division of Helene Curtis. Gene said he raised the matter with Goldman because he was concerned about the confusion caused by having salesmen from the Tulsa and Muskogee stores calling on the same customers, both representing themselves to be from Herzfeld's. Gene also spoke with Shelly Metz, Vice President of Sales for Helene Curtis, about the alleged dissension and confusion being created by Blankenship's movements into a market where he had not done business before. Significantly, the Herzfeld stores had originally represented themselves to Helene Curtis as one organization,

each operating in a separate territory. Gene testified that he was fearful Helene Curtis would believe the Herzfelds had misled it and drop the Herzfeld stores as distributors.

Gene stated that he was also concerned about the competitive effect on his stores' dollar volume if Jim Russian and Lynn Capps worked for HOM. Gene telephoned Russian and offered to employ him at Herzfeld's of Tulsa. Gene admitted at trial that he was lying when he made the offer. He had no intention of hiring Russian; he only wanted to confuse the issue.

Shelly Metz called Russian and told him he was making a mistake leaving Bottenfield's for HOM. Metz also told Russian that if Blankenship continued to create problems in the marketplace, HOM might lose the Helene Curtis line.

After receiving a call from Metz, Bill McBride, then Regional Manager for Helene Curtis, called Carl Blankenship. According to Blankenship's testimony, McBride told Blankenship that he could not hire Russian and that unless Blankenship got Capps out of the territory, he would lose the Helene Curtis line.

Fearful of losing Helene Curtis as a supplier, Blankenship testified he called Goldman and asked if the Herzfeld and Bottenfield organizations were putting so much pressure on Helene Curtis that his distributorship would be terminated. According to Blankenship, Goldman told him that it was likely he would be cut off "because the Russian and Capps deal are [sic] messing up the Bottenfield thirteen-store chain" and the other three Herzfeld stores. Rec., supp. vol. II, at 80. In response, Blankenship wrote a letter to Goldman stating that he would bring legal action if he was terminated as a Helene Curtis distributor. Goldman replied in writing that he was going to recommend to the marketing committee that HOM be terminated as a distributor

because Helene Curtis did not do business with anyone who threatens legal action against it. The marketing committee consisted of two individuals, Goldman and Metz. Helene Curtis subsequently ceased doing business with HOM.

## II.

## DISTRICT COURT PROCEEDINGS

HOM filed suit alleging that Helene Curtis and the Herzfeld defendants violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. For its section 1 claim, HOM contended that: (1) the Herzfeld defendants entered into an agreement to prevent HOM from competing with them in their territories; (2) the Herzfeld defendants sought to induce defendant Helene Curtis to cease doing business with HOM; and (3) all defendants combined and conspired to destroy HOM's business by terminating HOM as a distributor of Helene Curtis products. HOM further alleged that all defendants violated section 2 by combining and conspiring to give the Herzfeld defendants a monopoly in Helene Curtis products.

The case went to trial without a jury. After HOM presented its case in chief, the defendants moved under Fed.R.Civ.P. 41(b)[2] for a dismissal on the ground that plaintiff had shown no right to relief. The district court granted the motion, ruling that HOM had not proved the essential elements of each cause of action with the requisite credible evidence. Specifically, the court held that HOM had failed to demonstrate it was more probable than not that a combination of conspiracy and a restraint of trade existed. Underlying this conclusion was the factual finding that Helene Curtis acted independently in terminating HOM. Concerning the section 2 claim, the court held HOM had failed to prove a dangerous probability of defendants creating a monopoly. The trial court determined HOM did not show that defendants commit-

---

**2.** Rule 41(b) provides:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in

the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

ted an overt act to further the creation of a monopoly, or prove that defendants had sufficient market control to achieve a monopoly. On appeal, HOM claims that the court erred in making each of these findings and conclusions.

## III.

### DISMISSAL OF CLAIMS AGAINST HELENE CURTIS

In its appeal, HOM argues that Helene Curtis combined and conspired with the Herzfeld defendants to terminate HOM as a distributor of Helene Curtis products. HOM asserts that Helene Curtis, by joining the Herzfeld conspiracy, thereby became part of a horizontal restraint. HOM quotes the following passage from *Cernuto, Inc. v. United Cabinet Corp.*, 595 F.2d 164 (3d Cir. 1979), in support of this claim:

"When a marketing decision, although ostensibly taken by a manufacturer, is in fact the result of pressure from another customer, such a decision must be scrutinized more closely than solely unilateral action might be...."

" . . .

"Two of the most crucial differences between the conduct under consideration here and other accepted manufacturer actions are, upon analysis, readily apparent. When a manufacturer acts on its own, in pursuing its own market strategy, it is seeking to compete with other manufacturers by imposing what may be defended as reasonable vertical restraints. This would appear to be the rationale of the *GTE Sylvania* decision. However, *if the action of a manufacturer or other supplier is taken at the direction of its customer, the restraint becomes primarily horizontal in nature in that one customer is seeking to suppress its competition by utilizing the power of a common supplier.* Therefore, although the termination in such a situation is, itself, a vertical restraint, the desired impact is horizontal and on the dealer, not the manufacturer, level.

" . . . So here, if United and Lappin acted at Famous' direction, both the pur-

pose and effect of the termination was to eliminate competition at the retail level, and not, as in *GTE Sylvania* [433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568], to promote competition at the manufacturer level. Accordingly, the pro-competitive redeeming virtues so critical in *GTE Sylvania* may not be present here."

*Id.* at 168 (emphasis added) (footnotes omitted).

The court in *Cernuto* reversed a summary judgment in favor of defendants on the theory that if the allegations regarding the termination were proved, there would be a per se violation of section 1 of the Sherman Act. Relying directly on that decision and indirectly on language in *Continental T.V. Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), and *United States v. Topco Associates, Inc.*, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972), HOM asserts that all dealer induced terminations are per se violations of the antitrust laws, and that it was error for the district court to apply a rule of reason test.

 However, for HOM to prevail, it still must show that the termination was "the result of pressure from another customer," rather than "a manufacturer act[ing] on its own in pursuing its own market strategy." *Cernuto*, 595 F.2d at 168.[3] A supplier has the right to unilaterally select and terminate its own distributors if its actions have no anticompetitive purpose or effect. *Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1113–16 (5th Cir. 1979). *See also United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919); *Borger v. Yamaha International Corp.*, 625 F.2d 390 (2d Cir. 1980); *Natrona Service, Inc. v. Continental Oil Co.*, 598 F.2d 1294 (10th Cir. 1979); *Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d 1245 (5th Cir. 1975). *See generally* P. Areeda, *Antitrust Analysis* ¶ 512 nn. 42 & 43 (3d ed. 1981).

 The trial judge found that Helene Curtis acted independently when it terminated HOM. In reviewing that finding, we are governed by the clearly erroneous test. Fed.R.Civ.P. 41(b), 52(a).

---

**3.** HOM does not allege any independent vertical restraint by Helene Curtis.

"In a case tried without a jury, the trial court is not required to consider the evidence in the light most favorable to the plaintiff in determining whether to grant a motion to dismiss under Rule 41 made at the completion of the plaintiff's case. ... In such circumstances we must view the findings in the same way as those at the close of all the evidence, determining only whether they are clearly erroneous."

*Woods v. North American Rockwell Corp.*, 480 F.2d 644, 645–46 (10th Cir. 1973); *see also Nulf v. International Paper Co.*, 656 F.2d 553, 558 (10th Cir. 1981). "A choice between two permissible views of the evidence is not 'clearly erroneous.'" *Rasmussen Drilling v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1148 (10th Cir.), *cert. denied*, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978).

The district court made permissible inferences based on the record evidence. While threats and statements made by the Herzfeld defendants to Blankenship, Capps, Russian and other non-Helene Curtis personnel may shed light on whether the Herzfeld defendants themselves engaged in a conspiracy, they do not compel the conclusion that Helene Curtis terminated Blankenship as a result of pressure from the Herzfelds. Although Helene Curtis' actions in contacting Russian and the Herzfeld defendants show that Helene Curtis wanted Blankenship to cease his raiding efforts, Helene Curtis could have taken these actions for its own legitimate business reasons rather than at the behest of the Herzfeld defendants. It is true that the termination followed Gene Herzfeld's call to Helene Curtis informing the company of Blankenship's actions and the alleged confusion in the market caused by his conduct. However, the only direct evidence supporting HOM's contention that Helene Curtis terminated HOM at the Herzfeld defendants' instigation is Goldman's alleged statement that Blankenship would likely be cut off because he was interfering with the Bottenfield chain and the Herzfeld stores. Assuming the trial court found Blankenship's testimony on this statement credible, the remark could be in-

terpreted in either of two ways: (1) as an affirmation of pressure; or (2) as a reflection that Helene Curtis had independently assessed the situation and concluded that its own interest dictated a cessation of the problems HOM was causing in its distribution system.

Balanced against this evidence of dealership pressure is evidence that Helene Curtis had legitimate business reasons for terminating Blankenship. Moreover, the evidence indicates that the Herzfeld defendants were not in any position to coerce or exert substantial leverage on Helene Curtis. The Herzfelds had approached Helene Curtis and asked to become a distributor, not the reverse. They did not have exclusive distributorships; Helene Curtis had other distributors who could and did service the areas the Herzfeld stores were working. Also, Gene Herzfeld testified he told Helene Curtis of Blankenship's activities out of fear that his stores would be cut off if Helene Curtis learned the Herzfeld stores were not acting as the one organization they had represented themselves to be when they obtained the distributorships.

■ In light of the above evidence, we cannot say with a "definite and firm conviction that a mistake has been committed" in the trial court's finding that Helene Curtis acted independently in terminating HOM as a distributor. Therefore, we affirm the district court's dismissal of the section 1 claim against Helene Curtis. *See Nulf*, 656 F.2d at 558.

Because the same distributorship termination is the basis of HOM's claim that Helene Curtis conspired with the Herzfeld defendants to give them a monopoly in the distribution of Helene Curtis products, we also affirm the court's dismissal of the section 2 conspiracy claim against Helene Curtis.

## IV.

### DISMISSAL OF CLAIMS AGAINST HERZFELD DEFENDANTS

A. *Section 1 Claim*

■ The district court also dismissed the section 1 claim against the Herzfeld defend-

**846**

ants. The court reasoned that since the alleged unlawful restraint was the termination of HOM "at the direction of" the Herzfeld defendants or "in combination or conspiracy" with them, its finding of independence meant HOM had not shown an unlawful restraint. The court said: "The evidence fails to show a plurality of actors because Helene Curtis acted independently in terminating Plaintiff." App., vol. I, at 37. If by this finding the court meant that the Herzfeld defendants actually constitute one organization for purposes of Sherman Act liability, then, assuming the correctness of that proposition, it follows that the section 1 claim was properly dismissed. The requirement of conspiracy or agreement necessitates that more than one actor be involved in the unlawful restraint if section 1 is to apply.

However, we cannot determine whether the district court actually concluded that the Herzfeld defendants constitute one organization, or whether the court did not realize that HOM's section 1 claim contained an assertion of a horizontal conspiracy apart from the *Cernuto* theory of a supplier-dealer conspiracy to terminate HOM. Significantly, the court referred only to the alleged *Cernuto* violation in stating that HOM failed to prove an unlawful restraint.

■ The Herzfeld defendants could be guilty of a section 1 violation even if Helene Curtis never joined the conspiracy. *See, e. g., United States v. Topco Associates,* 405 U.S. 596, 608–09, 92 S.Ct. 1126, 1133–34, 31 L.Ed.2d 515 (1972) (horizontal territorial restrictions among competitors). The complaint and pretrial orders demonstrate that HOM alleged a conspiracy among the Herzfeld defendants to prevent HOM from competing in their territories and to otherwise destroy HOM as a competitor. According to the pretrial order, HOM contended that after this conspiracy was formed the Herzfeld defendants sought to induce Helene Curtis to terminate HOM.

The conspiracy might have failed in that effort and still have been in violation of the antitrust laws. The alleged efforts to keep HOM out of the Herzfeld defendants' territories and to induce Helene Curtis to terminate HOM might sustain a finding of a horizontal conspiracy among the Herzfeld defendants.

We therefore remand this case to the district court for evidentiary findings on whether the Herzfeld defendants constitute a single organization, *see generally* P. Areeda, *Antitrust Analysis* ¶ 334 (3d ed. 1981), and if not, whether HOM has made a prima facie case that the Herzfeld defendants violated section 1. We, of course, express no opinion on the merits of these contentions.

The necessity for a remand highlights the inadequacies of the district court's findings. They are unduly scant. Even if we take the court's statement that the evidence fails to show a plurality of actors as a clear finding that the Herzfeld defendants are one organization, the finding is still deficient. No factual basis is supplied to support the finding. In view of the store's separate corporate structures, the compositions of their stock ownership, and the assertions made by plaintiff, more detailed findings on this issue are required.[4] Fed.R. Civ.P. 52 "does not require the making of elaborate findings extending into minute and unnecessary detail on every feature of the case." *Nulf*, 656 F.2d at 561. But "substantial compliance with the fact-finding requirements of Rule 52(a) necessitates that the findings of fact on the merits include as many of the subsidiary facts as are necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Denofre v. Transportation Insurance Rating Bureau,* 532 F.2d 43, 45 (7th Cir. 1976). *Accord, Nulf*, 656 F.2d at 561; *Otero v. Mesa City Valley School District No. 51,* 568 F.2d 1312, 1316 (10th Cir. 1977).

**4.** Much the same problem plagued us regarding the court's finding that Helene Curtis acted independently. None of the subsidiary factors which led the court to make this broader finding are articulated.

Only when we have such findings before us can we properly review the trial court's decision.

In this case, it is for the trial court to first determine whether it needs to hear defendants' evidence before it makes the necessary additional findings and conclusions.

B. *Section 2 Claim*

The trial court's disposition of HOM's monopolization claim implies that the court may have failed to consider HOM's allegation of conspiracy to monopolize independent of Helene Curtis' participation. If the trial court finds that the Herzfeld defendants are separate organizations for antitrust purposes, it will also have to consider whether HOM proved a conspiracy by the Herzfeld defendants to monopolize "any part" of interstate commerce, *see Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1377 (10th Cir. 1979), *i. e.*, an "appreciable part of interstate commerce." *United States v. Yellow Cab Co.*, 332 U.S. 218, 225, 67 S.Ct. 1560, 1564, 91 L.Ed. 2010 (1947). *See generally* III P. Areeda & D. Turner, *Antitrust Law* ¶ 839 (1978); L. Sullivan, *Antitrust* § 49 (1977).

Judgment is affirmed in part and reversed in part, with remand to the district court for proceedings consistent with this opinion.[5]

**5.** HOM also argues on appeal that the court erred in refusing to review the taxation of costs against HOM in favor of the Herzfeld defendants. Since we have reversed the judgment on the merits as to these defendants, we do not reach this issue.